## DEMING INV. CO. v. LANHAM.

No. 2489.    Opinion Filed January 7, 1913.

Rehearing Denied February 11, 1913.

(130 Pac. 260.)

MINES AND MINERALS—Oil and Gas Lease—Construction. A clause in an oil and gas lease reading as follows: ''Provided, however, that if a well is not drilled on said premises, within one year from the date hereof, then this lease and agreement shall be null and void, unless the party of the second part, within sixty days from the beginning of each and every year after the expiration of the term above mentioned for the drilling of a well, shall pay a rental of $.25 per acre, until a well is drilled thereon, or until this lease is canceled, as herein provided,''—does not obligate the lessee to pay rent for delay in commencing to drill for oil and gas, said grant in the lease amounting only to an option to the lessee, to explore for oil and gas, and preventing the lessor, after receiving the consideration for the first year, from leasing to another, during such time, and after receiving a second or subsequent payment from leasing to another, until such delay

period had expired, the lessee having the option by continuing to pay such yearly payments to prevent the forfeiture of the lease.

(Syllabus by Robertson, C.)

*Error from Marshall County Court;*
*J. W. Falkner, Judge.*

Action by Manley Lanham, a minor, by his guardian, Perry G. Lanham, against the Deming Investment Company for rent on an oil lease. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

*William M. Franklin* and *George S. March,* for plaintiff in error.

*George E. Rider,* for defendant in error.

Opinion by ROBERTSON, C. On October 2, 1906, Manley G. Lanham, a minor, by his guardian, made and entered into a certain oil lease contract with the Deming Investment Company. Lanham claims that by the terms of said lease he is entitled to a rental of $40 per year, which the Deming Investment Company denies and refuses to pay. This contention is the only question in the record, and requires at our hands the construction of the following paragraphs of said lease, to wit:

"To have and to hold the same unto the said party of the second part, its successors and assigns, for the term of five years from date hereof, in consideration whereof, the said party of the second part agrees to deliver to the party of the first part in tanks or pipe lines the one-tenth part of all oil produced and saved from the leased premises. And should gas be found on said premises in paying quantities second party agrees to pay $100.00 yearly in advance for the product of each gas well while the same is being sold off the premises, and first party shall have free use of gas for domestic purposes, by making connection for such gas at the well at his own risk and expense. Second party agrees to locate all wells so as to interfere as little as possible with the cultivated portion of the premises, and to pay for all damage to the growing crops caused by said operation.

"Provided, however, that if a well is not drilled on said premises within one year from the date hereof, then this lease and agreement shall be null and void, unless the party of the second

part within sixty days from the beginning of each and every year after the expiration of the term above mentioned, for the drilling of a well, shall pay a rental of $0.25 per acre until a well is drilled thereon or until this lease is canceled, as hereinafter provided. And it is agreed that the completion of a well shall be and operate as a full liquidation of all rentals under this provision during the remainder of this lease. All rentals and other payments may be made direct to the party of the first part, or may be deposited to his credit at the Madill National Bank, at Madill, Indian Territory. This lease shall be null and void at the end of three years from this date without further liability to the second party if a well has not been drilled by it, its successors or assigns, during the said three years' period, provided that the party of the first part shall have given the party of the second part ninety days' written notice so to drill within said three years' period or forfeit the lease.

"And further, upon the payment of one dollar at any time by the party of the second part, or his successors in office, said lessee shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine, and this lease shall become null and void."

It is alleged in plaintiff's petition:

" * . * * That said lease was for a period and term of five years, and it was provided in said lease that if a well was not drilled on said premises within one year from said October 2d, 1906, the date of the execution of said lease, said defendant, the Deming Investment Company, should pay a rental of 25 cents per acre until such well was drilled thereon, or until said lease was canceled as provided in said lease. * * * That said defendant, the Deming Investment Company, failed and refused to dig a well on said premises within one year from the date of the execution of said lease, as aforesaid, and after said time, and has failed and refused, and still fails and refuses, to comply with each and every term and provision of said lease contract, has failed and refused, and still fails and refuses, to pay plaintiff the said sum of $40 due him under the terms of said lease contract. That the said lease contract was attempted to be canceled by said defendant, the Deming Investment Company, without notice to said plaintiff, and not in accordance with the terms of said lease contract on the 2d day of September, 1908 A. D., at which said last-named date there was due plaintiff as rental as

aforesaid the sum of $40, the same being 25 cents per acre for said 160 acres for one year."

It will be observed by a careful reading of the lease that there is a substantial variance between its terms and those alleged in the petition. Thus, in the petition, it is charged "that said lease was for a period of five years, and it was provided in said lease that if a well was not drilled on said premises within one year from said October 2, 1906, the date of the execution of said lease, said defendant, the Deming Investment Company, should pay a rental of 25 cents per acre until such well was drilled thereon, or until said lease was canceled as provided in said lease." A careful examination of the lease contract fails to show any such language, but, on the contrary, we find the following:

"Provided, however, that, if a well is not drilled on said premises within one year from the date hereof, then this lease and agreement shall be null and void, unless the party of the second part within sixty days from the beginning of each and every year after the expiration of the term above mentioned, for the drilling of a well, shall pay a rental of $0.25 per acre until a well is drilled thereon or until this lease is canceled, as hereinafter provided." •

Now it will be observed that the grantor agrees to lease the land for a term of five years, and is to receive therefor one-tenth net of all oil saved, and $100 per year for each gas well, but it is specifically provided that, if a well is not drilled within one year, then the lease shall be null and void, unless the party of the second part within sixty days from the beginning of each year after the expiration of the term above mentioned for the drilling of a well shall pay a rental of 25 cents per acre until a well is drilled, or until the lease is canceled. It is admitted that the company did not drill a well within one year, and it is also admitted that it did not pay the rent, but it must be remembered that the company had an option as to what it should do. If it desired to keep the lease alive, it must do one of two things; i. e., drill a well within one year, or pay a rental of 25 cents per acre until a well is drilled, or until the lease is canceled. By failing to drill a well or to pay the rent the lease became forfeited, and no rent

was due thereunder. Ordinarily forfeitures are not favored, but gas or oil leases furnish exceptions to this general rule. Thus, in paragraph 148, Thornton's (2d Ed.) The Law Relating to Oil and Gas, provides:

"Forfeitures, however, on the part of the lessee in a gas or oil lease, which arise by reason of his neglect to develop or operate the leased premises, are rather favored by the law, because of the peculiar character of the product to be provided."

And in section 155 it is said:

"Where a lease provided that the lessee was to pay a bonus of one hundred dollars, and a royalty of one-eighth part of the oil produced, that it was to continue five years, and as much longer as gas or oil was found in paying quantities, if gas were found, then three hundred dollars rental per year for each well, and there was a proviso that 'this lease shall become null and void, and all rights hereunder shall cease and determine, unless a well shall be completed on the premises within one month from the date hereof, or unless the lessee shall pay at the rate of one hundred dollars monthly in advance for each additional month'— it was held that the lease contained no covenant binding upon the lessee to pay rent, the only penalty imposed upon him being a forfeiture of his rights under the agreement. 'But the payment,' said the court, 'was means provided by the contract by which the exercise of the right of the lessor to assert a forfeiture could be postponed. If the lessee did not wish to postpone the exercise of such right, he had only to refrain from making the payment.' Where an oil lease was given for a certain period, providing that it should become void, and the rights of the lessee under it should cease unless a well should be completed on the premises within a certain period of time, or unless the lessee should pay a certain sum for each year the completion of the well should be delayed, it was held that the terms of the lease did not require the lessee to develop the land or pay the rent; the only penalty for such a failure being a forfeiture of his rights under it."

To the same effect is the rule announced in *Glasgow v. Chartiers Oil Co.,* 152 Pa. 48, 25 Atl. 232, in the syllabus of which it is said:

"An oil lease demised the oil and gas under the grantor's land with the right to go upon and operate the land for oil and gas purposes. The lease was to continue for five years, and as much longer as oil or gas should be found in paying quantities. The consideration was a bonus of $100, and a royalty of one-

eighth part of the oil produced. If gas was found, the rental was fixed at $300 per year for each well. The lease then proceeded as follows: 'Provided, however, that this lease shall become null and void and all rights hereunder shall cease and determine, unless a well shall be completed on the premises within one month from the date hereof, or unless the lessee shall pay at the rate of $100 monthly in advance for each additional month.' *Held*, that the lease contained no covenant on the part of the lessee to pay rent or develop the land. The only penalty imposed upon him for failure to operate the land or pay $100 per month for delay was a forfeiture of his rights under the agreement. The legal effect of the agreement is to confer on the grantee the right to explore for oil on the tract described. If he does not exercise this right within one month, it is lost to him, unless he chooses to pay $100 in advance as the price of another month's opportunity to explore. If he does exercise it, and finds nothing he is under no obligation to continue his explorations. If he explores and finds oil or gas, the relation of landlord and tenant or vendor and vendee is established, and the tenant would be under an implied obligation to operate for the common good of both parties and pay the rent or royalty reserved."

In *Snodgrass v. South Penn. Oil Co.*, 47 W. Va. 509, 35 S. E. 820, the court, in discussing the following provision in a gas and oil lease, to wit:

"Provided, however, that this lease shall become null and void, and all rights thereunder shall cease and determine, unless a well shall be completed on the premises within one year from the date hereof, or unless the lessee shall pay at the rate of $350 quarterly in advance for each additional three months such completion is delayed from the time above mentioned for the completion of such well, until a well is completed"

—says:

"Although the agreement contains the provision above quoted, yet that clause merely provides a means by which a forfeiture of the lease may be avoided. The agreement contains no contract or promise to pay anything whatever for the delay in the completion of a well, and yet the declaration claims that, by the terms of the contract, there is due from the defendant to the plaintiff on account of the sums to be paid quarterly in advance the sum of $1,400. The question in this case is not whether the defendant has forfeited the lease, but whether it is pecuniarily liable to the plaintiff for failing to make certain payments to the plaintiff whereby such forfeiture could have been

avoided. Counsel for plaintiff relies on the case of *Roberts v. Bettman,* 45 W. Va. 143, 30 S. E. 95, but that case was materially different from this. There the leases sued on contained the following clause: 'It is agreed that the party of the second part shall pay to the party of the first part $100 per month, in advance, until a well is completed, from the date of this lease, and a failure to complete such well or to pay said rental when due or within ten days thereafter shall render this lease null and void,' etc. There was an express promise to pay $100 per month in advance until a well was completed, but in the agreement sued on in the case under consideration there was no such promise or contract. Counsel for plaintiff in error claims that the lease continued, unless it had been surrendered by the defendant, but, even if that be true, it would work no benefit to the plaintiff in error, for the reason that there was no contract on the defendant's part to pay anything as rent or compensation for delay in commencing operations."

In *Lowther Oil Co. v. Guffey,* 52 W. Va. 88, 43 S. E. 101, the court having under consideration the following provision of an oil and gas lease, to wit:

"In case no well is completed within two years from this date, then this grant shall immediately become null and void, as to both parties; provided, that second party may prevent such forfeiture from year to year by paying to the first party annually in advance $18.75 at her residence, until such well is completed" —said:

"This latter clause converts what would be otherwise a perpetual grant into a lease from year to year, at the option of the lessee, until oil and gas are produced, and then to continue so long as they are produced in paying quantities."

The Supreme Court of Ohio in the case of *Van Etten v. Kelly,* 66 Ohio St. 605, 64 N. E. 560, decided June 24, 1902, among other things said:

"The plaintiff below claims that the words, 'unless second party shall pay to the first party $30 each and every month in advance which such completion is delayed,' there lies a promise to pay $30 per month for such delay. This is not tenable. The full force and effect of this 'unless' clause, taken by itself, is to give the lessee the option, by making such payment, to continue the lease in force to the end of the term without completion of the first well, or, upon failure to make such payment, allow the

lease to become null and void at the end of thirty days after the date of the lease."

Plaintiff below, in his petition, claimed that there had been no legal surrender of the lease, but this does not seem to be necessary. Thus in *Brooks v. Kunkle,* 24 Ind. App. 624, 57 N. E. 260, it was said:

"It does not appear that any part of the property of the second party was ever placed on the land, or removed therefrom, or whether or not there was any affirmative surrender or proposal therefor. But more than a year had elapsed, and the party of the second part had failed to avail himself of the right to drill a well, and no rent had been paid. There was no absolute requirement that the party of the second part should pay any rent, but the grant was to be void unless rent were paid. The instrument is susceptible of being construed as an expression of a rational and lawful agreement. We must construe it as expressed, attributing to the language its ordinary meaning, and we cannot construct a different contract by injecting additional words not implied in the terms employed by the parties, or by substituting meanings merely conjectured by us to be more reasonable than those expressed."

In *Frank Oil Co. v. Belleview Gas & Oil Co. et al.,* 29 Okla. 719, 119 Pac. 260, Mr. Justice Williams, in an elaborate opinion dealing with a similar question, said, concerning a clause in a lease which reads as follows:

"If no well is commenced on said premises within one year from this date, then this grant shall become null and void, unless second party shall pay to the first party eighty ($80) dollars for each year thereafter such completion is delayed, said rental to be paid quarterly in advance. Party of the second part further agrees to protect the lines of the land above described by immediately offsetting all wells drilled within 150 feet of said land, unavoidable delays excepted. It is further provided that this grant shall become null and void unless a well is commenced within thirty days from the date hereof, on the following land belonging to Benjamin L. Gibson * * * "

—"*Held,* that this provision did not bind the lessee to pay any rent for the land or for delay in commencing to operate for oil and gas, said grant or lease amounting to an option preventing the lessor, after receiving the consideration for the first year, from leasing to another during such time, and, after receiving a quarterly payment, from leasing to another until such delay

period of a quarter had expired, the lessee having the option by continuing to pay such quarterly payments, the word 'year' being used merely as a basis to fix the amount of quarterly payments."

The above is an instructive case, and in effect settles the question involved herein. (See that opinion for many cases in point.) The lease sued on herein does not bind the lessee to do anything. It is nothing but an option, preventing the lessor, after receiving the bonus or rent for the first year, from leasing the land to some one else during such time.

This being true, it follows that the action of the lower court in overruling the demurrer to the petition was error, for which the judgment should be reversed, and the cause remanded, with instructions to proceed in conformity with the views herein expressed.

By the Court: It is so ordered.