BRUNSON et al. v. CARTER OIL CO.

(District Court, E. D. Oklahoma. May 31, 1919.)

No. 2539.

1. MINES AND MINERALS ⬦⟶79(6)—OIL AND GAS LEASES—CONSTRUCTION AND EFFECT—UNLESS LEASE.

An oil and gas lease for a term of years, but providing that if no well is commenced within one year it shall terminate unless lessee shall before the end of the year pay a rental in advance, which shall extend the time for commencing a well for another year, with the same provision as to succeeding years, under the law of Oklahoma, as settled by decision, is simply a grant of an option to explore for oil and gas, carrying no vested interest in the real estate; but, while it gives no right in rem, it creates a right in personam for such exploration, which, when based on a valuable consideration, may, in a proper case, be protected in equity from forfeiture.

2. CONTRACTS ⬦⟶156—CONSTRUCTION—GENERAL AND PARTICULAR WORDS.

General words in one part of an act or instrument may be controlled and restrained by particular words in another, taken as expressing the intention with more precision.

3. SPECIFIC PERFORMANCE ⬦⟶57—CONTRACTS ENFORCEABLE—OPTION.

An option agreement to convey or renew a lease, without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity if made upon proper consideration.

4. MINES AND MINERALS ⬦⟶79(6)—OIL AND GAS LEASE—EQUITABLE RELIEF AGAINST FORFEITURE—MISTAKE.

A lessee in an "unless" oil and gas lease, which paid a substantial consideration for an optional right of exploration, with right of renewal each year thereafter for five years, by paying a yearly rental in advance, and which paid the rental for the first renewal, and also for the second in due time, but through inadvertence and mistake made the second payment to the original lessor, as shown by its system of records upon which it relied for such purpose, although notified of the transfer of the land, when sued for cancellation of the lease *held* entitled to equitable relief under Rev. Laws Okl. 1910, § 2844, providing for relief against forfeiture or a loss in the nature of a forfeiture occurring without gross negligence or fraud.

In Equity. Suit by E. L. Brunson and others against the Carter Oil Company. On motion to strike answer. Overruled.

This case is here on removal from the district court of Stephens county, Okl. Plaintiffs, complaining in their petition, aver that they are the owners of a certain tract of land in Stephens county, Okl.; that on May 18, 1916, A. C. Flowers and wife, Cordie Flowers, being the owners of said tract, executed and delivered to defendant an oil and gas mining lease thereon, said lease being "in consideration of one dollar in hand paid by the lessee and other valuable consideration," and which contained the following provisions:

"That the lessor, in consideration of one dollar ($1.00) in hand paid by the lessee, and other valuable considerations, receipt of which is hereby acknowledged, and the covenants and agreements hereinafter contained, hereby grants, bargains and sells all the oil and gas in and under the land hereinafter described, and grants, demises, leases and lets said land, itself unto the lessee, its successors and assigns, for the sole and only purpose of operating for and producing oil and gas thereon and therefrom, together with rights

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of way and servitudes for pipe lines, telephone and telegraph lines, for tanks, power houses, stations and fixtures, for producing and caring for such products and housing and boarding employés, and all other rights and privileges necessary, incident to or convenient for the economical operation of said land, alone or conjointly with neighboring land for oil and gas with the right to use free oil, gas or water, but not from lessor's water wells, for such purposes, and with the right of removing, either during or after the term hereof, all and any property and improvements placed or erected on the premises by lessee, including the right to pull all casing; * * * to have and to hold said lands, and all rights and privileges granted hereunder to and unto the lessee, its successors and assigns, for the term of five (5) years from the date hereof, and as much longer as oil, gas or either of them shall be produced from said lands by lessee in paying quantities. * * *

"In consideration of the premises, the lessee further covenants and agrees:

"First. To deliver to the credit of the lessor, free of cost in the pipe line to which it may connect its wells, the equal one-eighth (⅛) part of all oil produced and saved from the leased premises, as royalty, or, at lessee's election, to pay the lessor for such royalty the market price prevailing the day the oil is run into the pipe line or run into storage tanks, in which last event settlement and payment shall be made by the lessee on the 15th day of each month for the royalty so purchased by the lessee during the preceding month. * * *

"Third. If no well is commenced on said land on or before the 19th day of May, 1917, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender the lessor the sum of ninety ($90.00) dollars, in the manner hereinafter provided, which payment or tender shall operate as a rental for twelve months from and after the date last above stated, and the same shall also cover the right and privilege in the lessee to defer the commencing of said well during said period of months. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively during the entire five-year term of this lease. Lessor expressly declares that the down payment or bonus received by him for this lease at the time of the execution thereof is a good, valid and substantial consideration, and sufficient in all respects to support each and every covenant contained herein, including specifically the option granted the lessee to extend this lease from time to time during the five-year term thereof upon the payment or tender of the rentals hereinbefore provided for. Lessee agrees to immediately offset all paying oil or gas wells drilled on lands adjoining this tract, and it is expressly agreed that no implied covenants regarding the measure of diligence to be exercised by the lessee in the drilling of said land during the original five-year term hereof shall be read into this lease, it being the express agreement of the parties that the provisions of this paragraph set forth the exclusive conditions under which the lessee shall hold this lease for said original term of five years. * * *

"Fourth. All rentals due hereunder shall be paid by lessee's check, mailed, postage prepaid, to lessor at Duncan, Okl., or to First Nat. Bank of Duncan, Okl., for lessor's credit on or before the date any such rental shall become payable; said bank, by a power irrevocable, is hereby made the agent of lessor to accept all rentals paid hereunder, and the same shall continue as the depository of such rentals during the life of this lease regardless of changes in the ownership of said land or said rentals. No change in the ownership of said land, or the rentals or royalties due hereunder, shall affect or bind the lessee until such purchaser shall have furnished the lessee an abstract of title to such lands, certified to date, showing as a part thereof the title claimed by such purchaser. * * *"

That thereafter, on or about the 2d day of April, 1917, said Flowers and wife granted and conveyed by deed said land to plaintiffs, which was duly placed of record; and thereafter, on or about the 5th day of May, 1918, said deed, with an abstract of title, as provided

259 F.—42

in said lease, was furnished to said defendant as evidence of plaintiffs' ownership; that at the time of said purchase by plaintiffs the defendant had an oil and gas lease on said land under the terms of which defendant was to pay the lessor, his heirs and assigns, the sum of $90 by the 19th day of May, 1918, as rental in lieu of development or said lease would terminate on said date; that said payment was not made, and that said lease was then and there terminated.

Defendant admits the execution of said oil and gas mining lease, but avers that it paid the lessor as a bonus for said lease the sum of $540, in cash; that it had drilled no well on said land for oil and gas mining purposes, and that by the terms of such lease the delay rental accrued thereunder on or before May 19, 1917, in the sum of $90; that such sum was paid to the persons entitled thereto before said due date; that in order to continue said lease in force beyond May 19, 1918, it was necessary for it to pay a rental in the sum of $90, and that such rental was not paid or tendered to plaintiffs on or before May 19, 1918, but that "through inadvertence and mistake" it did pay said rental before said May 19, 1918, to the said A. C. Flowers and wife, the lessors in said lease, instead of to the plaintiffs.

Defendant further averred that:

"During the months of April and May, 1917, it was the owner of more than 10,000 leases for oil and gas mining purposes covering lands in Oklahoma, Kansas, and other states, practically all of which leases provided for the periodical payment of rentals; that the number of leases upon which the defendant pays rentals averaged about 900 per month prior to April, 1917; that during the month of April, 1917, 665 rentals were paid, necessitating an expenditure of $61,968.46; that it is the practice of the defendant to pay said rentals a month in advance of the final date when they may be paid; that the great number of payments thus required of defendant and the varied conditions under which such payments must be made demand a thorough and comprehensive system, insuring the payment thereof of the correct amount and to the proper parties, and the delegation of the duty of keeping proper records and of making such payments to competent and experienced clerks qualified in regard thereto; that accordingly this defendant has created a department designated as the 'Rental Department,' which is in charge of competent and experienced clerks, whose duty it is to make a proper record of each lease as secured, and to note on such record the periodical payments of rentals required under the terms of the particular lease, and showing the persons who are entitled to receive such payment; that a separate sheet calling for these details is provided for each lease, and such sheet is then arranged in a record according to the calendar months, in order that the necessity for the payment of each rental shall be brought to the attention of said rental department at least one month before the particular payment is to be made; that among the details shown on such sheet is a column showing the persons entitled to such rental; that when this defendant is advised that there has been a change in the ownership of the land covered by any of its leases, so that there is a change in the parties who are entitled to receive the rentals accruing on such lease thereafter to accrue, the clerk in the rental department who has charge of such a transaction makes a note on the rental sheet to the effect that the ownership of the land has changed, and the names of the new owners are written on such rental sheet, and shown thereby as entitled to receive the rentals thereafter accruing; that owing to the vast amount of lands which this defendant has leased there are more than a thousand transactions per year of this character; that, owing to the number of leases owned by this defendant, no reference is had to the original file for the purpose of securing the data to make proper rental payments, but such data is procured solely from the rental sheet covering a particular

lease; that it would be impracticable to refer in each case to the files, and it is necessary that all necessary information be placed on such rental sheet so that payment of rentals may be made without reference to the original files."

Defendant admits that on or before the 5th of May, 1917, plaintiffs mailed to defendant a deed from said Flowers and wife to said plaintiffs, and that upon receipt of such deed it wrote a letter to the said plaintiffs acknowledging receipt of such deed, and advising them that the entry had been noted on defendant's rental sheet showing the plaintiffs to have acquired such land, and to be entitled to the rentals thereafter to accrue, but through inadvertence and mistake of its clerk this was omitted to be done. Defendant says that the rental which accrued May 19, 1917, had been paid by it to the said lessors previous to the receipt of said notice from the plaintiffs that they had purchased such land; that upon the receipt by its clerk of said deed it intended to change its records so as to show the plaintiffs entitled to future rentals, and to pay the same to them, but that through inadvertence and mistake of its clerk the same was omitted, and no entry was made upon the rental sheet covering such lease showing a change of ownership of said land.

Defendant avers it intended to pay the rental which accrued under the terms of such lease on or before May 19, 1918, to the persons entitled thereto; that a check to cover such rental was prepared April 15, 1918, for the sum of $90, payable to the order of the First National Bank, for deposit to the credit of A. C. and Cordia Flowers; that such check was prepared by reference to the rental sheet covering such lease, and was made to cover payment to the said A. C. and Cordia Flowers, for the reason that its clerk had omitted to note on said rental sheet the fact that the plaintiffs had purchased such land and were entitled to receive the rentals which would accrue after defendant had received notice of such transfer; that said check was received by said bank on the 20th day of April, 1918, and the sum of $90 represented thereby was on such date deposited by said bank to the credit of A. C. and Cordia Flowers as payment of the rental which would accrue under the terms of such oil and gas mining lease on or before May 19, 1918; that it did not discover such error until the 22d day of July, 1918, at which time it received a letter from H. B. Lockett, attorney at law, at Commanche, Okl., advising it of such fact; that as soon as possible after the discovery of said error it tendered to the plaintiffs the sum of $90 to cover the rental which accrued under the terms of such oil and gas mining lease on May 19, 1918, and plaintiffs refused such tender.

Defendant avers that on the date of the accrual of such rental it intended to pay the same to the parties entitled thereto, such oil and gas mining lease then being of the value of $900, and at the date of the filing of said action it was of the value of $4,000. That the plaintiffs have been in no way damaged by failure to make such payment, and have lost nothing by reason of the error above set out, and it then and there tenders into the court for the plaintiffs the sum of $90, with legal interest thereon since May 19, 1918, and prays that

plaintiffs' petition be dismissed, and that defendant be adjudged to be the owner of a valid title to said lease for oil and gas mining purposes, and that it be decreed to be in full force.

Bond, Melton & Melton, of Chickasha, Okl., and H. B. Lockett, of Commanche, Okl., for plaintiffs.

Jas. A. Veasey, L. G. Owen, and C. M. Oakes, all of Tulsa, Okl., for defendant.

WILLIAMS, District Judge (after stating the facts as above). [1] It is essential to determine whether this instrument was an option, or as sometimes denominated a unilateral contract, subject to a strict construction, and forfeitable for failure to comply within the fixed time limit.

Burress et al. v. Diem et ux., 23 Okl. 776, 101 Pac. 1116, was an action based on an oil and gas mining lease containing what is known as the surrender clause, but was disposed of on the assumption of the binding force of such lease without the question of its validity being expressly passed on.

Kolachny v. Galbreath et al., 26 Okl. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451, which was what is commonly termed an "unless lease," containing a surrender clause giving to the lessee the right at his election to surrender and terminate the same by serving written notice upon the lessor, after which all liability on the part of the lessee should terminate, was disposed of on a question of practice, but on the assumption that the lease was valid. The court there further held that such an oil and gas mining lease was simply a grant of a right to prospect for oil and gas, no title vesting in the oil or gas until such substance was reduced to possession by extracting same from the earth, and denominated such lease, following such special words of description or limitation, as an "incorporeal hereditament."

In Frank Oil Co. v. Belleview Gas & Oil Co. et al., 29 Okl. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487, where what is known as an "unless lease" was under consideration, it was held that—

"Oil and gas, while in the earth, unlike solid minerals, are not the subject of ownership distinct from the soil, and the grant of the oil and gas, therefore, is a grant, not of the oil that is in the ground, but of such a part as the grantee may find, and passes nothing except the right to explore for the same under the terms of such contract."

Such lease was there also declared to be an option to explore for oil and gas. Citing Kolachny v. Galbreath et al., supra, and Jones v. Moncrief-Cook Co., 25 Okl. 856, 108 Pac. 403. In the latter opinion (25 Okl. 856, 108 Pac. 403) an option is held to be a unilateral contract to be construed liberally in favor of the party that is bound, and strictly against the party that is not bound. That rule of construction was held to apply to oil and gas mining leases in Frank Oil Co. v. Belleview Gas & Oil Co. et al., supra, and Superior Oil & Gas Co. v. Mehlin, 25 Okl. 809, 108 Pac. 545, 138 Am. St. Rep. 942. In the former case the action of the lower court, in adjudging a forfeiture of the lease upon the failure of the lessee to pay the rental for delay in development as stipulated therein, was affirmed.

In Duff et al. v. Keaton et al., 33 Okl. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472, the question was whether an oil and gas lease by a minor, executed through his legal guardian, for a term of years, is such a sale or conveyance of real estate as contemplated by section 5314, Compiled Laws of Okl. 1909 (section 6377, Revised Laws of Okl. 1910), the conclusion there being that it was not, and that a lease for oil and gas mining purposes for a term of years was nothing more than a chattel real, or a chattel interest. The holdings in Kolachny v. Galbreath and Frank Oil Co. v. Belleview Gas & Oil Co., as heretofore referred to, were therein approved.

In Deming Inv. Co. v. Lanham, 36 Okl. 773, 130 Pac. 260, 44 L. R. A. (N. S.) 50, the lease under consideration being also an "unless lease," containing the surrender clause providing that—

"Upon the payment of one dollar * * * said lessee shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue * * * shall become null and void,"

—the court held that such lease did not bind the lessee to do anything, and was nothing but an option, preventing the lessor, after receiving the bonus or rental for the first year, from leasing the land to some one else during such period.

In Mitchell v. Probst, 52 Okl. 10, 152 Pac. 597, the instrument under consideration was an "unless lease" containing the following provisions:

"That if a well is not drilled on said premises within one year from date hereof, then this lease and agreement shall be null and void, unless the party of the second part, within each and every year in advance, after the expiration of the time above mentioned for the drilling of a well, shall pay a rental of $2.50 per acre for the first year, and $5.00 per acre thereafter for every year it is not canceled, until a well is drilled thereon or until this lease is canceled as hereinafter provided."

There the defendants admitted the execution of the lease; that they had not drilled the well within the year, but averred that the lessor had constituted the Central National Bank of Tulsa its agent for the collection of rentals, and that they had paid to the Central National Bank for the use and benefit of said lessor, on the 7th day of December, 1911, the sum of $25, which had been placed to the credit of the lessor. By way of verified reply this was denied by the plaintiff. The evidence for plaintiff was that no well had been drilled on the land, and no rent paid when due on November 1, 1911, the default period; that plaintiff called at the Central National Bank about the 3d or 4th of November, 1911, and was advised that no money had been placed there for him, and about December 3d or 4th a like inquiry was made, with the same result; that on December 7, 1911, defendant deposited $25 to the credit of plaintiff for the rent due on November 1, 1911, and on December 5, 1912, a deposit of $50 was made in the said bank to plaintiff's credit. There was no evidence to show that this money was ever received, or its payment to the bank for plaintiff's benefit ever ratified, or that he knew of it until in May, 1912. There was nothing to show that the bank was Probst's agent, except the provision in the lease that all rentals and other payments may be

made direct to the party of the first part or deposited to his credit in the Central National Bank. On May 27, 1912, plaintiff served notice on lessee declaring the lease forfeited for failure to perform its conditions. The lessee had never taken possession under the lease. At the trial defendants demurred to the evidence, which was overruled. They declined to proceed further and judgment was rendered in favor of plaintiff. After quoting at length, with approval, from Frank Oil Co. v. Belleview Gas & Oil Co., the following excerpt is also quoted with approval from Barnsdall v. Owen, 200 Fed. 519, 118 C. C. A. 623:

"An agreement in the form of a lease for a limited term of years, such as these were, granting the right to explore for gas and oil, and to retain that found and extracted, is of a peculiar class. The interest of the lessee is more like a license than an estate in the land itself."

Further on in the opinion it is said: .

"It is true that in Frank Oil Co. v. Belleview Gas & Oil Co., supra, it is said:

"'This contract having been entered into prior to the erection of the state, section 1118, Compiled Laws of Oklahoma 1909 (Rev. Laws 1910, sec. 968), which provides, "Time is never considered as of the essence of a contract, unless by its terms expressly so provided," has no application,' etc.

"But this statute does not mean that time is never the essence of a contract, unless these words are used in it. In Cooper v. Ft. Smith & W. R. Co., 23 Okl. 139, 99 Pac. 784, it is held:

"'Although it is provided (Wilson's Rev. & Ann. St. 1903, sec. 809) that "time is never considered as of the essence of a contract, unless by its terms expressly so provided," no particular form of expression is required, but it must appear from the express provisions contained in such contract that it was the intention of the parties thereto that time should be the essence thereof.' Federal Trust Co. v. Coyle, 34 Okl. 635, 126 Pac. 800; Green Duck Co. v. Patterson, 36 Okl. 392, 128 Pac. 703.

"The language of this contract is set out above, and, in our opinion, brings it within the reasoning of the above citations.

"Apply the principles settled in these cases to the case at bar. The plaintiffs in error had only a license to explore the land for gas and oil for the time mentioned in the lease, with an option to extend the license upon the payment of the sums provided in the lease at the time therein set out. The plaintiffs in error never took possession, did nothing towards exploring the land for gas and oil, and failed to secure a prolongation of their license by making the payment for this privilege at the agreed time. As construed by this court in the cases above cited, the legal effect of the contract was that, if a well was not drilled on the land in one year from the date of the contract, the agreement should be null and void, but with an option to the plaintiffs in error to continue their license under the agreement by paying in advance a rental of $2.50 per acre for the first year, and $5 per acre thereafter, until a well was drilled or the lease canceled. They now ask this court to change their contract by allowing them to pay the sum for the extension of the option to some other time than that specified in the contract. This we cannot do under the evidence in this case. * * *

"It is also contended by the plaintiffs in error that by providing in the lease that the payment might be made to the Central National Bank this constituted the bank the agent of the lessor, and it was given authority to waive the forfeiture by receiving the money after the specified time. But in our opinion there was no question of agency in the matter. The contract provided, for the convenience of the parties, that a deposit in the bank to the credit of the lessor should be a sufficient compliance with the contract. Undoubtedly such a deposit before the right to a forfeiture had accrued would have been a fulfillment of the conditions of the contract, and would have pre-

vented a forfeiture. But we look in vain for any authority given the bank to waive any rights of the lessor. In fact, under the provisions of the contract, and in the absence of any other evidence, the bank was only a depository, agreed upon by the parties as a convenient place in which to deposit the money due the plaintiff, but with no authority to waive any rights of either party, or to bind either party further than to receive the money when paid. If the money had been deposited in the bank before the expiration of the time limit, it would have been a sufficient compliance with the terms of the contract; otherwise it is not."

In Re Indian Territory Illuminating Oil Co., 43 Okl. 307, 142 Pac. 997, it is said:

"We, therefore, conclude that oil and gas, while lying in the strata of Mother Earth, from which they are produced, constitute a sort of subterranean færa naturea, which, if taxed at all prior to being reduced to possession, must be taxed as real property to the owner of the land under which for the time being they may lie, and cannot be taxed against one who has *a mere lease or license to go upon the premises, search for, and, if found, take them away.* [Italics mine.] Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okl. 719, 119 Pac. 260, 13 L. R. A. (N. S.) 487; Kolachny v. Galbreath, 26 Okl. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; Carter v. Tyler County, 45 W. Va. 806, 32 S. E. 216, 43 L. R. A. 725; Kansas Natural Gas Co. v. Bd. of Com'rs of Neosho Co., 75 Kan. 335, 89 Pac. 750; Peterson v. Hall, 57 W. Va. 535, 50 S. E. 603; Barnes v. Bee (C. C.) 138 Fed. 476; Hughes v. Vail, 57 Vt. 41; State v. South Penn Oil Co., 42 W. Va. 80, 24 S. E. 688."

The Supreme Court of Oklahoma here in a unanimous opinion obviously understood Frank Oil Co. v. Belleview Gas & Oil Co., supra., and Kolachny v. Galbreath, supra, to hold that the leases under consideration were options for development, and not carrying with their execution a present vested interest in the real estate.

In Aggers v. Shaffer et al., 256 Fed. 648, the court said:

"The lease [there under consideration] was for the term of five years, and as much longer as oil or gas was found in paying quantities. The lessee paid the lessors $120 as consideration at the execution of the lease, and contracted to drill a well on the premises within twelve months, or thereafter pay the lessors a rental of $120 per annum, quarterly in advance, until the well was commenced. If a well was driven and oil or gas found, the lessors were to receive substantial returns therefrom. The lessee had the right at any time to surrender the lease for cancellation upon paying the lessors one dollar, provided he exercised it before bringing any suit or action to enforce its terms."

In McKee v. Grimm et al., 57 Okl. 680, 157 Pac. 308, the court said:

" * * * Parties may so word their contract that a failure to commence operations within the time specified, or to pay the rents, will, ipso facto, render the lease null and void, and automatically relieve the lessee of liability; as in Deming Investment Co. v. Lanham, 36 Okl. 773, 130 Pac. 260, 44 L. R. A. (N. S.) 50. But to effect this end it must be expressly stipulated in the lease contract that the lease shall become null and void at a certain time, unless the lessee begins operations or pays the rental stipulated. Under such a contract as that, a failure to drill within the time specified, or to pay the rents stipulated, automatically terminates the lease, and releases the lessee from any liability. But there is no such provision in the contract under consideration; and hence that class of cases, construing contracts which have such a clause in them, are not applicable to the facts in the case at bar."

The foregoing defines what is known as an "unless lease," but holds that the lease under consideration does not come within that

class, it being what is generally termed an "or lease." See, also, Cohn v. Clark, 48 Okl. 500, 150 Pac. 467, L. R. A. 1916B, 686.

The holding in Brewster v. Lanyon Zinc Co., 140 Fed. 801, 78 C. C. A. 213, that—

"Although the parties, with the sanction of a general practice, denominated the instrument a 'lease,' strictly speaking it was not such, but was more in the nature of a grant in præsenti of all the oil and gas in the lands described —these minerals being part of the realty—with the right to enter and search for them, and to mine and remove them when found. * * * Because, however, of the designation given to the instrument by the parties, it is here spoken of and treated as a lease. It runs to the lessee, its successors and assigns, is without limitation as to time, and plainly shows that it is designed to be perpetual, if the oil or gas shall continue and the lessee and those claiming under it shall fulfill its stipulations. True, it was made and accepted upon certain conditions, one of which is that the premises may be reconveyed at any time at the option of the lessee; but that does not make the estate which it creates a mere tenancy at will within the operation of the common-law rule that an estate at the will of one party is equally at the will of the other. That rule is without application to a lease for a defined and permissible term, but which reserves to the lessee an option to terminate it before the expiration of the term. * * * The present lease is of this type. It is essentially one in perpetuity. Such a term is permissible in the state of Kansas, where the creation of leaseholds in real property is almost entirely a matter of contract between the parties. * * * The option reserved to the lessee was not designed to convert the estate, as otherwise defined, into a mere tenancy at will, or to make it determinable at any time at the option of the lessor. The lease expresses the intention of the parties, and, no rule of law forbidding, that intention is controlling,"

—is in harmony with Kolachny v. Galbreath and Frank Oil Co. v. Belleview Gas & Oil Co. The following excerpt from Kolachny v. Galbreath:

"The lease relied upon by the plaintiff does not vest in him the title to the oil and gas in said land, and is not a grant of any estate therein, but is simply a grant of a right to prospect for oil and gas, no title vesting until such substances are reduced to possession by extracting same from the earth—an incorporeal hereditament,"

—would have been more accurate or specific had it closed by saying, "being at most an incorporeal hereditament."

[2] General words in one part of an act or instrument may be controlled and restrained by particular words in another, taken as expressing the intention with more precision. It is a well-recognized principle of statutory construction, not only with respect to penal statutes, but also as to those affecting only civil rights and duties, that where words particularly designating or describing specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are to be deemed to have been used not in the broad sense which they might bear if standing alone, but as related to the words more specifically defining and particularizing as to matters to which they pertain or relate. Lewis' Sutherland, Statutory Construction, vol. 2 (2d Ed.) §§ 348, 422.

In Kolachny v. Galbreath et al., supra and Frank Oil Co. v. Belleview Gas & Oil Co. et al., supra, there was no offer in the bill of equity for injunction to waive what is known as the provision for the sur-

render clause which was contained in said lease. 21 Am. & Eng. Ency. of Law (2d Ed.) p. 292, and authorities cited in footnote 2.

In Pucini et al. v. Bumgarner (Okl.) 175 Pac. 537, it was held that where the surrender clause in an oil and gas lease provides that such surrender clause and the option therein contained shall cease and become absolutely inoperative upon the institution of any suit by the lessee to enforce the lease or any of its terms, or to recover possession of the demised lands or any part thereof, against the lessor, his heirs, successors, and assigns, and such condition is supported by a sufficient consideration, that said provision is valid and binding, and that when lessee or his assigns files suit to enjoin the releasing of said premises for oil and gas mining purposes, or further interfering with lessee's rights under the said lease, said so-called surrender clause becomes inoperative, and the lessee thereby becomes bound to perform the covenants of the lease, and that equitable relief will be granted to protect lessee's rights under said lease.

Brennan et al. v. Hunter et al. (Okl.) 172 Pac. 49, was neither an "unless" nor an "or" lease.

"The lease to Hunter and associates was dated February 18, 1914, and required the lessees to commence development within 90 days thereafter. The lease did not contain a provision for delay in development by the payment of rentals such as is usually contained in oil and gas leases."

In the opinion it is said:

"In this case possession was delivered to them and operations commenced, and a well drilled in which gas was found in paying quantities, and the lessees thereby acquired a vested, though limited, estate in the lands for the purposes named in the lease, and are entitled to be protected in the exercise of their rights according to the terms and conditions of their contract, unless the lease has been forfeited for a violation of some of its terms, or has been abandoned by them, neither of which contingencies has occurred according to the findings of the court."

In Hill Oil & Gas Co. v. White et al., 53 Okl. 748, 157 Pac. 710, after citing with approval the cases of Kolachny v. Galbreath et al., Frank Oil Co. v. Belleview Gas & Oil Co. et al., and Duff et al. v. Keaton et al., the Supreme Court of Oklahoma declared—

"that contracts unperformed without sufficient consideration which are optional as to one are optional as to both, and specific performance thereof will not be awarded."

In Superior Oil & Gas Co. v. Mehlin, 25 Okl. 809, 108 Pac. 545, 138 Am. St. Rep. 942, the court said:

"The general rule in such cases is that contracts unperformed, optional as to one of the parties, are optional as to both."

Whatever may be the subject-matter in contemplation, the contract called an option transfers from the one party to the other no title thereto. It thus differs from an executed contract for the sale of property by which title to the thing sold is transferred. Vol. 21, Am. & Eng. Ency. of Law (2d Ed.) p. 925; Hart v. Hart, 22 Barb. (N. Y.) 609; Noel v. Barrett, 18 Okl. 304, 90 Pac. 12; Welch v. Bohart, 40 Okl. 439, 135 Pac. 1065; In re Ind. Ter. Illuminating Oil & Gas Co., supra.

While an option transfers no rights in rem, it does create rights in personam. This so-called property is the right which the one acquires of the performance of certain acts which the latter has undertaken to perform upon the request of the former. The right thus acquired is exclusive, and is one of which he may not be deprived without his consent. Ramsey v. West, 31 Mo. App. 676; Kellow v. Jory, 141 Pa. 144, 21 Atl. 522; Northwestern Wheel, etc., Co. v. Milwaukee Electric St. R. Co., 94 Wis. 603, 69 N. W. 371; Nevitt v. McMurray, 14 Ont. App. 126; 21 Am. & Eng. Ency. of Law (2d Ed.) p. 925.

The right, under an unperformed contract executed for a valuable consideration, to enter upon the land and begin development or complete development in a limited period ·constituting a unilateral contract amounting to an option, whilst a vested property right, does not carry any vested interest in the land. When a party, by virtue of said contract, enters upon the land and begins development in accordance with the option, it becomes a bilateral contract, and then and there an interest in the premises vests. In lieu of such development, the delay rental may be paid and the option contract kept alive.

[3] Here the contract is based upon a sufficient consideration, and the parties are competent. It is definite in its terms, and free from fraud, and is not against public policy. A giver ·of an option has often sought, and sometimes successfully, to resist performance by urging that, as the party holding the option could not be compelled to exercise it affirmatively, it would be inequitable to require performance by the other. In a majority of the more recent cases the courts have recognized the plea only to overrule and disallow it. It is now clearly recognized law that specific performance will not be refused on such ground. An option agreement to convey or renew a lease, without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity if it is made upon proper consideration, or forms part of a lease or other contract between the parties that may be the true and proper consideration for it. 21 Am. & Eng. Ency. of Law (2d Ed.) p. 928.

The instrument under consideration in Brown et al. v. Wilson et al. (Okl.) 160 Pac. 94, L. R. A. 1917B, 1184, is what is generally termed as an "or lease," under which the lessee was bound (1) to drive a well in a fixed time, or (2) to pay each year or each quarter during the term of five years a stipulated amount, payments to be made in advance until a well is commenced, or (3) surrender all rights thereunder by giving notice and paying a stipulated sum.

The only option in such an instrument is that to surrender or cancel the lease, the lessee otherwise being bound to develop or to pay. On account of this option or surrender clause, the majority of the court in that case held that the contract, being optional as to one, was optional as to both parties, and the equitable relief sought would not be awarded. The only prior Oklahoma cases that gave semblance of support to that holding was Hill Oil & Gas Co. v. White et al. and Superior Oil & Gas Co. v. Mehlin.

In Kolachny v. Galbreath and Frank Oil Co. v. Belleview Gas & Oil Co. specific performance was refused not on the ground that the

contract was altogether an option, but on account of the supplemental option to terminate or cancel the contract at any time, even after the court had granted a specific performance at the instance of the optionee. The court said:

"A court of equity will not do a vain and useless thing by rendering a decree settling the rights of parties which one of them may set aside at his will."

In Northwestern Oil & Gas Co. v. Branine et al. (Okl.) 175 Pac. 533, where an "or lease" was under consideration, while not expressly so, in effect modified Brown v. Wilson, supra, wherein it is said:

"(1) It is agreed that the sole question presented is whether the presence of a surrender clause in the lease, whereby the lessee might, on the payment to lessors of the sum of $2, surrender said lease and relieve itself from any further liability thereunder, render the lease unilateral and voidable for want of mutuality, and conferred a corresponding right on the lessors to terminate said lease at will, and refuse to accept rentals when tendered, though tendered in strict conformity with the terms of the lease.

"Plaintiffs rely on the case of Brown v. Wilson [Okl.] 160 Pac. 94, L. R. A. 1917B, 1184, and concede that, if the decision in that case does not govern here, the judgment of the trial court in plaintiff's favor, canceling the lease, should be reversed and the cause remanded.

"At the time the lease was executed it was not certainly known whether oil and gas, or either of them, would be found upon the premises, and the development thereof would naturally be attended with the hazards incident to the development of unproven territory. Should a failure result, the loss would be borne wholly by the lessee, while, on the contrary, should development prove successful, the lessor, without having run any risk incident to the exploration, would receive a substantial part of the proceeds from the oil and gas produced therefrom. With this situation in the minds of the parties, it was one of the stipulations in the lease that if a well should not be commenced within 12 months from the date thereof the lessee should have the right to delay operations by paying to the lessors $40 per quarter. The lease itself is couched in plain and unambiguous language, and there is no claim made of any fraud, deception, or unfair dealing by the lessee in procuring it. There is no legal impediment shown which would prevent the parties from entering into any contract which they saw fit, nor from expressing it in language of their own choice; and under these circumstances it is the duty of the court to give effect to the meaning and intention of the parties as expressed in the language of the contract, and the court has no right to make a contract for the parties different from that actually entered into by them. Section 949, Rev. L. 1910; Cohn v. Clark, 48 Okl. 500, 150 Pac. 467, L. R. A. 1916B, 686."

In Rich v. Doneghey (Okl.) 177 Pac. 86, what is termed an "or lease" was under consideration, which was a lease—

"for a term of five years, * * * and as long thereafter as oil or gas or either of them is produced from said land, * * * said lease providing for stipulated royalty out of the oil and gas discovered and reduced to possession when so discovered and reduced to possession, the lessee agreeing to complete a well on said premises within six months or pay at the rate of $15 for each additional month such completion is delayed beyond said six months' period."

Said lease also provided that the lessee—

"shall have the right at any time, on the payment of $1, * * * to surrender this lease for cancellation, * * * provided that this surrender clause, and the option therein reserved to the lessee, shall cease and become absolutely inoperative immediately and concurrently with the institution of

any suit in any court of law or equity by the lessee to enforce this lease, or any of its terms, or to recover possession of the leased land or any part thereof."

Here the lease was held to be a grant to explore for oil or gas underlying the grantor's land, to the grantee and his heirs and assigns forever, carrying an interest in the premises. This being an "or lease," the same as was under consideration in Northwestern Oil & Gas Co. v. Branine, supra, and Aggers v. Shaffer, supra, said holding is not an addition to or extension or modification of the rules laid down by the Supreme Court of Oklahoma in the cases heretofore referred to, to wit: Kolachny v. Galbreath et al.; Frank Oil Co. v. Belleview Gas & Oil Co. et al.; Duff et al. v. Keaton et al.; Deming Inv. Co. v. Lanham; Mitchell et al. v. Probst.

In Frank Oil Co. v. Belleview Gas & Oil Co., supra, a distinction between an "or" and an "unless" lease is specifically recognized, wherein the court said:

"We have been unable to find a single case where a court of chancery ordered the specific performance of a lease at the instance of a lessee where there had been no development, and the lease provided only that it should be forfeited unless the lessee paid a certain sum of money for delay, such contract being merely optional; but, where the contract provided that there should be certain development, or the lessee should pay a certain specific sum of money, then, in the event of delay or failure of development, an obligation was incurred on the part of the lessee to pay a certain sum of money."

In Carter Oil Co. v. Popp et ux. (Okl.) 174 Pac. 747, not being disclosed as to whether it was an "or" lease or an "unless" oil and gas mining lease, it was held, where the land attempted to be leased was a homestead, the wife must join with the husband. But that is immaterial as to whether it was an "unless lease," to wit, a unilateral option, not vesting an interest in the premises, or an "or lease," vesting an interest in the premises; for when possession is taken and development commenced or completed as stipulated, the option would ripen into a bilateral contract. It would be just as essential for the wife to join in a lease in fact an option which, when complied with by the lessee, would ripen into a vested right in the premises, as it would in the lease that is not an option, and carrying with its execution a vested right in the premises.

In Eldred et al. v. Okmulgee Loan & Trust Co., 22 Okl. 742, 98 Pac. 929, an oil and gas mining lease was brought within the act of April 21, 1904, removing restrictions upon an alienation of land of all allottees of the Five Civilized Tribes who were not of Indian blood, except minors and except as to homesteads. See, also, Parker v. Riley, 243 Fed. 42, 155 C. C. A. 572. When possession was taken of the land, and drilling was commenced or completed as stipulated, the lease ceased to be a unilateral option, but then became a bilateral contract, and vested an interest in the premises, and was a completed alienation.

For the same reasons in Hoyt et al. v. Fixico (Okl.) 175 Pac. 517, it was necessary for such a lease to be approved by the county court under section 9, Act of Congress May 27, 1908, c. 199 (35 Stat. 315).

The grant to lessee in the case at bar was also for the "purpose of operating for and producing oil and gas thereon and therefrom, to-

gether with rights of way and servitudes for pipe lines, telephone and telegraph lines, for tanks, powerhouses, stations, and fixtures, for producing and caring for such products, and housing and boarding employés, and all other rights and privileges necessary, incident to, or convenient for the economical operation of said land." It must be borne in mind that this lease was an option, and that such option was unilateral, and that it did not become bilateral until development commenced, and then such rights as herein outlined vested.

Barker v. Campbell-Ratcliff Land Co. (Okl.) 167 Pac. 468, L. R. A. 1918A, 487, said:

"In these cases [referring to Kolachny v. Galbreath and Frank Oil Co. v. Belleview Gas & Oil Co.] this court held the leases in question to be a license to go upon the land and explore for oil and gas; that, owing to the nature of oil and gas, they are not subjects of sale in place under the land, so as to pass title and support an action of ejectment. The exception in the deed in question here gives the defendant the right to go upon the land for the purposes of exploring for oil, and it is admitted that Hoskins has produced oil in paying quantities, and the cancellation of his lease and his exclusion from the premises are the purpose of this suit.

"Under the weight of authority, the right to go upon the land for the purpose of prospecting and taking therefrom the oil and gas is a proper subject of sale, and may be granted or reserved. The title to the oil and gas becomes perfect, when discovered and reduced to actual possession. The real subject of the exception and reservation in the deed here was the right to enter upon the land for the purpose of taking possession of the oil by mining and boring for the same."

Such right or interest did not vest until the option became a bilateral contract.

In Lindlay et al. v. Raydure (D. C.) 239 Fed. 928, is an elaborate and exhaustive opinion as to the so-called surrender clause, where the Oklahoma and Illinois cases are referred to, wherein it is stated that in Kolachny v. Galbreath et al. it was held in effect a court of equity would not, under the facts in that case, grant relief in an "unless lease," and said:

"It followed the Supreme Court of Illinois, which, as we shall see, holds that an oil and gas lease with a surrender clause is valid at law, and not subject to cancellation in equity, but because thereof refuses to grant any relief in equity to the lessee against the lessor, which position it has taken on the assumption that such a suit is one for the specific performance of a contract."

Under the Illinois rule as interpreted by the Supreme Court of the United States in Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856, an oil and gas lease in that case carried a present vested freehold right or interest in the premises which was taxable in that state as real property; citing Bruner v. Hicks, 230 Ill. 536, 82 N. E. 888, 120 Am. St. Rep. 332; Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144; Poe v. Ulrey, 233 Ill. 56, 84 N. E. 46; Ulrey v. Keith, 237 Ill. 284, 86 N. E. 696; People v. Bell, 237 Ill. 332, 86 N. E. 593, 19 L. R. A. (N. S.) 746, 15 Ann. Cas. 511; Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N. E. 308.

The lease under immediate consideration in Guffey v. Smith, supra, is what is known as an "or lease." None of the leases under con-

sideration in the Illinois cases cited in Guffey v. Smith come within the class known as an "unless lease."

In Cortelyou v. Barnsdall, 236 Ill. 138, 86 N. E. 200, the lease provides:

"That the lessor hereby grant unto lessee for the term of three (3) years (and so long thereafter as oil or gas is produced from the land leased and royalty and rentals paid by lessee therefor) the exclusive right to mine for and produce petroleum and natural gas from and the possession of so much of eighty (80) acres of land, * * * with the right to use water and gas (if found) for the necessary engines, and to remove all machinery, fixtures, etc., placed by lessee on the premises. * * * This lease is to be null and void and no longer binding on either party if a well is not commenced on this block of 1,000 acres within twelve months from this date, *unless* [italics mine] the lessee shall thereafter pay annually to lessor twenty-five cents per acre per year for each year's delay in commencing said well. Each payment to extend the time for completion for one year. A deposit to the credit of lessor in Oblong Bank, Oblong, Ill., to be a good payment of any money on. this lease. * * * All grants and covenants to extend to the heirs and assigns of the parties hereto. Lessee to bury all pipe lines below plow depth when requested."

In the opinion it is said:

"After appellees notified Seybert that they had elected to revoke the *option* [italics mine] given by the lease, the appellants, as averred by their answers and shown by the proof, within 12 months from the date of the lease made tender of the 25 cents per acre therein specified for extending the time for the completion of the contract. * * *

' "Of the questions which are open for our consideration the initial one is, was Seybert in fact bound to do anything whatever under the *option* [italics mine] agreement? If not, as he had not paid anything for the *option* [italics mine], had not acted on the agreement, and had not, after it was signed, bound himself to accept the *option* [italics mine], appellees were at liberty to avoid the undertaking."

In Illinois Kaolin Co. v. Goodman et al., 252 Ill. 99, 96 N. E. 867, the holding in Cortelyou v. Barnsdall is reaffirmed. In Illinois an "unless lease" is regarded as an option. The lease in Guffey v. Smith, which was an "or lease," bound the lessee to complete a well on the premises within nine months after the date of the lease, or to pay at the rate of 25 cents per acre per year, quarterly in advance, for the additional time the completion of a well is delayed beyond the nine months. The lease also contained the surrender clause to the effect that upon the payment of $1 at any time the lessee, his heirs or assigns, shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue thereunder shall cease and determine.

It was there (Guffey v. Smith) held that injunctive relief should be awarded to protect a present vested leasehold, amounting to a freehold interest, from continuing an irreparable injury calculated to accomplish its practical destruction. In the opinion it is said:

"It is settled by the decisions of the Supreme Court of Illinois that an oil and gas lease *like that of the complainants* [italics mine] passes to the lessee, his heirs and assigns, a present vested right—'a freehold interest'—in the premises, that this interest is taxable as real property, and that the clause giving the lessee an option to surrender the lease at any time is valid, does not create a tenancy at will, or give the lessor an option to compel a surrender, and does not make the lease void as wanting in mutuality."

Guffey v. Smith has no such application to an "unless lease" as construed by the Supreme Court of Oklahoma.

[4] Section 2844, Rev. Laws Okl. 1910, provides that:

"Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

The answer avers that the lessee paid the lessor as a bonus the sum of $540 in cash; that the first annual delay rental in the sum of $90 was paid; and that the second was transmitted as herein disclosed. The lessee does not state in its answer that it intends to or binds itself to develop, but it is bound by the terms of its contract either to develop or pay the rental by a fixed time, in order to avoid a forfeiture, and this, according to the averments of its answer, it attempted to do. The question is, shall it be relieved under the facts from the forfeiture?

A mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in (1) an unconscious ignorance or forgetfulness of a fact past, or (2) belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed. Section 908, Rev. Laws, Okl. 1910.

The lessee had a reasonable and approved system or plan for accounting and bookkeeping and for the conduct of its business under which the mistake occurred. The option and privilege and right contained under the "unless lease," although not carrying an interest in the premises until the lessee had gone upon the land and reduced it to possession and commenced development, is a property right, a vesting right in personam, and the lessee, under a proper case, is entitled to be relieved by equity from a forfeiture.

In James on Option Contracts (1916 Ed.) § 862, it is said:

"In option contracts courts view any delay in election, beyond the fixed option time, with strictness, since, as it is said, it is optional with the optionee whether or not he will elect, and that in the meantime the optionor is bound. But * * * the general rule is subject to the qualification that courts of equity may and do grant relief to an optionee in default in cases where the delay or failure is attributable to inequitable conduct on the part of the optionor amounting to estoppel, or where there is mistake or some other equitable ground for involving its jurisdiction, or where there has been providential intervention."

The lease in the case at bar does not contain what is known as the surrender clause; but even if it did, and also contained the additional clause providing that such surrender clause, or the option therein contained to so surrender, shall cease and become absolutely inoperative by the institution of any suit by lessee or his assigns to enforce the lease or any of its terms, or recover possession of the demised lands or any part thereof against the lessor, his heirs, successors, or assigns, and such condition was supported by sufficient consideration, it would be entitled in a proper case to specific performance. Pucini v. Bumgarner, supra.

Under the averments of defendant's answer a valid option is disclosed as having been executed based on a sufficient consideration, and under which certain development was to be made under a forfeiture provision.

In plaintiffs' petition it is alleged that about May 5, 1918, the deed, with an abstract of title to said land as provided in said lease, was furnished to the defendant as evidence of plaintiffs' ownership.

In defendant's answer it is averred that about May 5, 1918, plaintiffs mailed to it a deed from the lessor and his wife, and that upon receipt of such deed it wrote a letter to the plaintiffs acknowledging receipt thereof, and advising that it had made entry upon defendant's rental sheet, showing plaintiffs to have acquired such land, and to be entitled to the rentals thereafter accruing, but, through inadvertence and mistake of its clerk, this entry was omitted. Said deed was executed by the lessor in favor of plaintiffs on May 19, 1916, and filed for record on February 10, 1917. In apt time before May 19, 1917, $90 was transmitted in accordance with the contract to the original lessor. Obviously the plaintiffs received this sum of money prior to May 5, 1917. The evidence of title was sent by plaintiffs to the defendant on said date. But for the clause in the lease providing no change in the ownership of said land, or the rentals or royalties due hereunder, shall effect or bind the lessee until such purchaser shall have furnished the lessee an abstract of title to such lands, certified to date, showing as a part thereof the title claimed by such purchaser, the transmittal to the bank for the benefit of the original lessor would have been a literal compliance with said option by defendant. Frank et al. v. Stratford-Hancock et al., 13 Wyo. 37, 77 Pac. 134, 67 L. R. A. 571, 110 Am. St. Rep. 963.

The defendant mailed this check to the bank on the 20th day of April, 1918, it being due on May 19, 1918.

In Frank Oil Co. v. Belleview Gas & Oil Co. et al., supra, it was said:

"There is no question in this case as to the miscarriage of the check by mail, or the lessee thereby being prevented by an unavoidable casualty or misfortune from making such payment."

Defendant has shown itself "ready, desirous, prompt, and eager," and acted within the fixed option time. Wilkins v. Evans, 1 Del. Ch. 156. If plaintiffs had made inquiry at the First National Bank at Duncan, as they probably did in 1917, they would probably have received the remittance in time in May, 1918. At any rate, the original lessor, if he received the money from the bank, could receive it only for the benefit of the grantee.

In cases of judgment by default rendered against a party on account of unavoidable accident or misfortune, such party being free from fault or negligence, the courts have awarded relief. McLaughlin et al. v. Nettleton, 25 Okl. 319, 322, 105 Pac. 662; C., R. I. & P. Ry. Co. v. Eastham et al., 26 Okl. 605, 110 Pac. 887, 30 L. R. A. (N. S.) 740.

The motion to strike defendant's answer will be overruled.