F. H. Chapple *et al.* v. The Kansas Vitrified
Brick Company.

**No. 13,911.**  (79 Pac. 666.)

SYLLABUS BY THE COURT.

Landlord and Tenant — *Gas and Oil Lease Construed.* In an action for the recovery of real property the title was admitted to be in plaintiffs and the defendant had possession, and claimed a right of possession, under a gas and oil lease, which provided that it should become null and void at the expiration of two years from its date if a well had not have been sunk on the premises, unless the lessee should elect from year to year to continue such lease by paying, or depositing to the credit of the lessor at a designated bank, each year in advance, twenty-five cents for each acre covered by the lease. *Held,* that the placing of the lessee's check in the designated bank for the amount of money necessary to continue the lease was not a compliance with the condition requiring a deposit of money.

Error from Neosho district court; Leander Still-well, judge. Opinion filed February 11, 1905. Reversed.

*B. F. Shinn, Cates & Cates,* and *Keplinger & Trickett,* for plaintiffs in error.

*Farrelly & Evans,* and *S. C. Brown,* for defendant in error.

The opinion of the court was delivered by

Greene, J. : This was an action for the recovery of real property. The defendant admitted the plaintiffs' title but pleaded possession and right of possession under an oil and gas lease. Judgment was rendered for defendant, from which plaintiffs prosecute error. While there are many alleged errors of which complaint is made, those which concern the instructions are the most important. The following portions of

the lease become necessary to a clear presentation and determination of the question presented :

"This lease, made between F. H. Chapple and wife, Mary, parties of the first part, and the Chanute Prospecting Company, of Chanute, Kan., party of the second part,

"WITNESSETH : That in consideration of one dollar, the receipt of which is hereby acknowledged, and the further consideration of drilling test wells or prospecting for minerals in Neosho county, Kansas, for oil, gas, lead or zinc ore, brick material, or other mineral, parties of the first part hereby agree with the party of the second part : That it shall have the exclusive right for ten years from this date to enter upon and operate for oil, gas, lead or zinc ore, brick material or other mineral all that certain tract of land in Tioga township, Neosho county, Kansas, described as follows, to wit : Southeast quarter section 25, township 27, range 17, containing 160 acres more or less, upon the following terms and conditions : . . . In case no oil- or gas-well is sunk on these premises within two years from this date this lease shall become absolutely null and void, unless the second party shall elect from year to year to continue this lease by paying or depositing to the credit of the first parties at the Chanute State Bank, each year in advance, twenty-five cents per acre for each acre covered by this lease, until a well or other prospecting has been completed on these premises. . . .

"In witness of which we have hereunto set our hands and seal, this 3d day of January, A. D. 1900."

This lease also contained a provision by which its conditions extended to the executors, heirs and assigns of both parties. It was regularly assigned to the defendant.

The defendant having admitted title in plaintiffs, the right of possession followed, unless the defendant was possessed of some superior right. To establish this right it relied on the lease and the performance

of its conditions. It was conceded that a well had not been sunk, or other prospecting completed, on the premises within the two years specified in the lease. The defendant contended that before the expiration of the two years from the date of the lease it deposited in the Chanute State Bank, to the credit of plaintiff, twenty-five cents for each acre covered by the lease. The evidence in support of this contention was that on January 2, 1902, the secretary of the defendant company drew its check on the bank for forty dollars, payable to the order of plaintiffs, and that Mr. Ward, one of the officers of the company, delivered this check to G. N. Lindsay, its treasurer, for his signature, together with a voucher, or receipt, to be signed by plaintiffs upon receipt of this check.

When the check and voucher were delivered to G. N. Lindsay he was the cashier of the Chanute State Bank. He testified that they were received by him on January 2, 1902, as treasurer of defendant company, and that as such treasurer he signed the check, and as cashier of the bank placed it and the receipt in a drawer of one of the desks; that the custom of the company would have required the plaintiffs to sign the receipt before the delivery of the check to them, and that he was so instructed on this occasion; that when the check was delivered to him the defendant had a deposit in the bank largely in excess of the amount of this check. No money was ever deposited in the bank by the defendant to the credit of the plaintiffs, and no credit to them was caused to be entered on the books of the bank by it. The check was not delivered to plaintiffs, and they had no information of its existence until the 17th day of February, 1902, when one of the plaintiffs called on Mr. Ward for the lease, informing him that it had terminated

by reason of the non-compliance of the defendant. He was then informed for the first time that the defendant had drawn its check, together with a voucher or receipt for plaintiffs to sign, and had left them in the Chanute State Bank, and that if they would go there and sign the voucher they could get the check for the money.

It conclusively appears from the evidence that the plaintiff F. H. Chapple called at the bank on January 2, 1902, to have his bank-book balanced by the cashier; that he called on three or four occasions subsequent thereto, and before the 17th of February, and had his balance stated, and on neither of these occasions did Mr. Lindsay inform him that the defendant had left with him its check payable to plaintiffs' order. There is no dispute in the evidence upon any of these facts.

At the conclusion of the evidence the court instructed the jury as follows:

"This action, in the light of the petition filed by the plaintiffs, is nominally an action of ejectment, but in the light of all the pleadings and the testimony that has been introduced, the action in substance is one to procure the cancelation and setting aside of a certain oil, gas and mineral lease heretofore executed by the plaintiffs to certain parties, and which lease was subsequently assigned to the defendant in this action. The only matter of fact in dispute between the parties which the court deems necessary to submit to you and instruct you thereon is in regard to the alleged payment of forty dollars which the defendant alleges it made on January 2, 1902, for the purpose of keeping the lease in force. The lease in question contains this clause:

"'In case no oil- or gas-well is sunk on these premises within two years from this date this lease shall become absolutely null and void, unless the second party shall elect from year to year to continue this

lease by paying or depositing to the credit of the first party at the Chanute State Bank, each year in advance, twenty-five cents per acre for each acre covered .by this lease.'

"It being undisputed that no oil- or· gas-well had been sunk on the leased premises within two years from its date, the lease would therefore become null and void unless the aforesaid clause I have just read was substantially complied with.   Therefore, if you should believe from the evidence that the defendant did not, on or before January 3, 1902, pay or deposit to the credit of the plaintiffs at the Chanute State Bank the sum of forty dollars, or did the things in substance amounting to such payment or deposit, as I shall hereinafter indicate, then the plaintiffs would be entitled to recover in this action.

"But, on the other hand, if you should believe from the evidence that on January 2, 1902, the defendant deposited in said bank its check payable to the order of F. H. Chapple in the sum of forty dollars ; that said defendant had at said time in said bank standing to its credit a sum largely in excess of said forty dollars ; and if you should further believe that thereafter said F. H. Chapple, if acting honestly and in good faith, could have obtained said money from said bank or had it passed to his credit by informing said bank of his desires in that regard, then and under those circumstances, if they exist, the plaintiffs would not be entitled to recover in this action ; and the fact, if so, that the officers or clerks of said bank, in some unintentional manner, failed to credit said forty dollars on the pass-book of plaintiff Chapple, and the further fact that a receipt for the forty dollars was attached to the check which defendant wished the said plaintiff should sign, would not, under all the circumstances and the issues in this case, make any difference.

"As I remarked to you at the start, while the action as disclosed by the petition is what is sometimes called a common-law action, being one in ejectment, yet, under all the pleadings and the evidence, the question whether the lease in controversy should be adjudged void or not is one peculiarly for equitable considera-

tion, and should be governed by equitable principles, and such principles I have endeavored hypothetically to indicate to you in these instructions.''

It is very evident from these instructions that the court misconceived the nature of this action. It was not an action to cancel a lease nor an equitable suit, but a common-law action for the recovery of real estate. While it is said in *A. T. & S. F. Rld. Co. v. Pracht*, 30 Kan. 66, 71, 1 Pac. 319, that ''an action for the recovery of real property . . . is equitable as well as legal,'' an examination of that opinion will disclose that the writer was not trying to classify an action for the recovery of real property, but was addressing himself to the kind of title which would sustain a recovery in such an action. It would perhaps have been more accurate had it been said that one might recover in such an action upon either an equitable or legal title, or, as said in *Simpson v. Boring*, 16 Kan. 248, that '' any kind of an estate in land, legal or equitable, is sufficient to enable a plaintiff to recover in an action in the nature of ejectment, under section 595 of the civil code, as against a party who has no interest in the property. The question of who shall recover in such an action depends entirely upon the question, which party has the paramount right to the property in controversy.''

The defense was also a legal, and not an equitable, one. Whether the defendant had deposited to the credit of the plaintiffs twenty-five cents for each acre of land described in the lease prior to the expiration of the two years from its date, was the only question of fact to be tried. What the defendant claimed to have done in the performance of this duty being undisputed, it was a question of law whether its acts constituted performance. It may not be inapplicable

to suggest that courts construe with considerable strictness the provisions of oil and gas leases requiring work to begin within a certain time, as well as those provisions which require continuous operation, and forfeitures for neglecting to perform either of these conditions are favored rather than disfavored by the law. (*Edwards v. Gas Co.*, 65 Kan. 362, 69 Pac. 350; *Brown v. Vandergrift*, 80 Pa. St. 142; *Munroe v. Armstrong*, 96 id. 307; *Gadbury v. Ohio etc. Gas Co.*, 162 Ind. 9, 67 N. E. 259, 62 L. R. A. 895.)

The lease in question was continuous for ten years, two years certain, and eight additional years at the option of the lessee or its assigns. It, however, contains a defeasance clause which terminates it absolutely at the expiration of two years in case no well is sunk on the premises, unless the lessee exercises its option of continuing it longer by complying with its conditions. (*Brown et al. v. Fowler et al.*, 65 Ohio St. 507, 63 N. E. 76.)

The acts performed by the defendant were not a compliance with the requirements of the lease. The terms of the lease were unequivocal; the lessee was either to pay or to deposit the money. The plaintiffs could not be compelled to accept the defendant's check, if tendered within the time. That was not the contract. They could not have been compelled to sign a receipt or voucher. That was not the contract. They were not compelled to institute inquiry to ascertain whether the defendant was seeking in some way not expressed in the lease to comply with, or to evade, the terms of the lease. The check of the company payable to the order of plaintiffs, in the hands of its treasurer, was not equivalent to placing the money in the hands of the plaintiffs, or to depositing that amount to their credit in a solvent bank. It is immaterial that defendant was solvent, or that it had a

deposit in the bank upon which it drew this check. The plaintiffs had not agreed to depend upon its solvency or to take its check. Upon the undisputed facts the court should have instructed the jury to find for the plaintiffs.

The judgment of the court below is reversed, and the cause remanded for further proceedings.

All the Justices concurring.