## EASTERN OIL CO. v. SMITH et al.

No. 11255—Opinion Filed Nov. 30, 1920.

Rehearing denied Feb. 15, 1921.

(Syllabus by the Court.)

**1. Payment—Definition—Effect.**

"Payment" may be defined as the performance of the consideration clause of a contract according to the terms thereof. It implies a debt from one who is to pay to the one who is to receive, and when the payment is completed the debt will be discharged.

**2. Oil and Gas—"Unless" Leases—Termination.**

Under an "unless lease," the lessee of oil lands, so long as he pays the rentals in the manner provided, has an option to continue the lease in force, and it is subject to termination at his will, which privilege he may exercise by a failure to pay the stipulated rental, in which event the lease automatically terminates.

**3. Same—Time As of the Essence of Contract.**

Where an oil and gas lease expressly provides that rights of parties shall terminate if no well be drilled within a fixed period, unless the lessee on or before that date shall pay or tender to the lessor a fixed sum, time is of the essence of the contract.

**4. Contracts—Optional Contract—Construction.**

When contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound.

**5. Oil and Gas—"Unless" Lease—Rights of Parties—Rentals.**

Oil and gas leases which provide if a well is not drilled on the premises within a certain date, or a stipulated rental thereon paid, said lease shall terminate as to both parties or shall be null and void, unless rentals are paid, is an optional contract, and while the lessor is bound within the time to accept the rentals, the lessee is not bound to pay the same, and the lessor cannot maintain a suit to collect the rental.

**6. Appeal and Error—Review—Findings—Conclusiveness.**

Where the trial court made its findings of fact upon conflicting testimony and this court is unable to say from the reading of the entire record that the finding of fact of the court is against the clear weight of the evidence, the finding will not be disturbed on appeal.

**7. Oil and Gas—Lease—Conditions—Termination.**

The lessee is bound by the terms of the lease, and where the terms of the lease provided that if a well was not completed within one year from the date thereof or certain rentals paid as therein provided, the lease should terminate as to both parties, held, the failure to complete a well or pay the rental within the time stipulated automatically terminated the lease.

**8. Appeal and Error—Review — Findings — Action to Cancel Oil and Gas Lease.**

In an action to cancel an oil and gas lease which contained the provision that if no well be commenced within a stipulated time or certain stipulated rentals paid thereon to lessor or to lessor's credit in the National Bank of Commerce on or before a certain date, the lease should terminate as to both parties, and the trial court found no well was completed nor payment made as provided for in said lease, held, from an examination of the entire record, the finding of the trial court that no well was completed within a stipulated time, nor the rentals paid as provided by the terms of said lease, is not clearly against the weight of the evidence, and therefore the finding will not be disturbed upon appeal.

**9 Oil and Gas—Lease Construction—Depository for Payment of Rentals.**

Where an oil and gas lease provides that "the lessee on or before a certain date shall pay or tender to the lessor or to the lessor's credit in the National Bank of Commerce, Tulsa, or its successors which shall continue as the depository regardless of changes of ownership of said land," held, said provision in the lease makes the bank the depository for the purpose of receiving the money, and limits the authority of the bank to receiving payment to be deposited to the credit of lessor.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by G. J. Smith and Wallace Doolin against the Eastern Oil Company to cancel oil lease. Judgment for plaintiffs, and defendant brings error. Affirmed.

John B. Richards, West, Sherman, Davidson & Moore, and Ames, Chambers, Lowe & Richardson, for plaintiff in error.

Wm. Blake and Stuart, Sharp & Cruce, for defendants in error.

McNEILL, J. This action was commenced in the district court of Creek county by G. J. Smith and Wallace Doolin, as plaintiffs, against the Eastern Oil Company, as defend-

ant. For convenience, the parties will be referred to herein in the same relative position they occupied in the court below. Smith and Doolin are the owners of 60 acres of land in the west half of the southeast quarter of section two (2), township nineteen (19) north, range seven (7) east I. M., and Hugh King was the owner of the other 20 acres of said west half of said southeast quarter of section two (2), township nineteen (19) north, range seven (7) east I. M. Prior to the time Smith and Doolin became the owners of said land, an oil and gas lease had been executed thereon, and after they became the owners of the land the Eastern Oil Company became the owner of the oil and gas lease, and it is also the owner of a separate oil and gas lease on the 20 acres belonging to Hugh King.

The plaintiffs commenced this action asking to have said oil and gas lease canceled and their title quieted against the Eastern Oil Company, alleging that the defendant had failed to pay the rental payable December 23, 1916, in the sum of $60; also the rental payable December 23, 1917, in the sum of $60; and also the rental payable December 23, 1918, in the sum of $60. Plaintiffs allege that, by virtue of the terms of said lease the lease terminated as to both parties when the lessee failed to pay the rental, and said lease was a cloud upon their title. The lease contained the following provisions, to wit:

"If no well be completed on said land on or before the 23rd day of December, 1916, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor or to lessor's credit in the National Bank of Commerce, Tulsa, or its successors which shall continue as the depository regardless of changes of ownership of said land the sum of $60 which shall operate as a rental and cover the privilege of deferring the completion of a well for twelve months from said date and in like manner and upon like payment or tender the completion of a well may be further deferred for like periods of the same number of months successively."

The defendant answered as follows:

"That it is the owner of the oil and gas lease described in the plaintiffs' petition, covering the land described therein, and owned by the plaintiffs.

"This defendant denies that it has failed, neglected and refused to pay the rental payable each year under and by virtue of the terms and provisions of such lease, and states that it has each year when said rental has become due paid same to the plaintiffs in the manner provided in said lease, and states that it has in all respects carried out the terms and conditions of said lease and performed its obligations thereunder, and that said lease is now a good and valid lease."

Upon the trial of the case to the court, the court rendered judgment in favor of plaintiffs and against the defendant. The judgment of the court that is material is as follows:

"And the court having heard the argument of counsel, found the issues for the plaintiffs, and that the defendant had failed, neglected and refused, as alleged in the petition of the plaintiffs, to tender or pay, by legal and proper tender, the rental accruing December 23, 1917, under the oil and gas lease set forth and described in the pleadings, and failed and neglected to have on deposit to the credit of the plaintiffs in said bank, on or before December 23, 1917, the rentals due on that date, and further found that no oil and gas wells had been drilled on the lands covered by said lease, either by the original lessee or by his assigns, and that said lease should, therefore, be canceled and set aside as a cloud upon the title of the plaintiffs, the owners of the lands covered thereby, to all of which the defendant then and there excepted."

From said judgment, the defendant has appealed to this court, and for reversal assigns numerous assignments of error. The parties to the controversy have filed very extensive briefs and cite the fact that the lease has become very valuable since the trial of the case in the district court. The fact that the property has become very valuable since the trial of the case does not in our judgment change the issues as framed in the lower court, nor does it change the construction to be placed upon the lease contract. The lease contract is entitled to have the same construction placed upon it whether the same is valuable and the lessee is claiming the same is in full force and effect as it would if the lease had become worthless and the lessor had brought suit to collect the payments of rentals provided in said lease and the lessee was denying liability thereon, contending that the lease had terminated as to both parties.

While attorneys for the defendant present the case in their brief on numerous theories, yet the pleadings as framed in the lower court and the finding of fact of the trial court leave the case in its final analysis with but one issue of fact to be determined, to wit: Whether the finding of fact of the trial court that the rentals payable December 23, 1917, had not been paid according to the terms of the contract, is clearly against the weight of the evidence.

After this question is determined, we must then apply the law applicable to the findings of fact.

The lease in the instant case is an "unless" lease, and this court has uniformly held that a lease which contains the provision that "if no well is commenced on said premises within a stipulated time, the same shall become null and void unless the lessee shall on or before said date pay a stipulated rental," is an optional contract, and while the lessor is bound, the lessee is not bound, and the lessor cannot maintain a suit to collect the rental. Deming Investment Co. v. Lanham, 36 Okla. 773, 130 Pac. 260; Mitchell v. Probst, 52 Okla. 10, 152 Pac. 597. In the case of Northwestern Oil and Gas Co. v. Branine, 71 Oklahoma, 175 Pac. 533, this court stated as follows:

"Under an 'unless lease', the lessee of oil lands, so long as he pays the rentals in the manner provided has an option to continue the lease in force, and it is subject to termination at his will, which privilege he may exercise by a failure to pay the stipulated rental, in which event the lease automatically terminates. The lessor has no right to terminate the lease while the lessee complies with its terms."

This court, in the case of Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 Pac. 514, held that a lease which contained the terms, "shall terminate as to both parties upon failure to drill a well or pay the rental," was in effect the same kind and character of lease as the one that contained the provision that it should be null and void. A like holding was announced in the case of Curtis v. Harris, 76 Okla. 226, 184 Pac. 574.

This court is likewise committed to the rule that in an "unless" lease which provides if no well is completed that the rights of the parties shall terminate or become null and void unless on or before a stipulated date the lessee shall pay or tender to lessor a specified rental, "time is of the essence of the contract." Garfield Oil Co. v. Champlin, supra; Northwestern Oil and Gas Co. v. Branine, supra; Curtis v. Harris, supra; Mitchell v. Probst, 52 Okla 10, 152 Pac. 597.

The lease in the instant case provided three methods by which the lessee might extend the lease beyond the first year and from year to year during the remaining term of the lease.

First: By drilling a well on said premises. It is conceded this was not done.

Second: By payment or tender direct to lessors of a certain rental. It is conceded that this was not done.

Third: By payment or tender to the credit of lessors in the National Bank of Commerce the sum of $60 on or before December 23,

1917, which would have extended the lease until December 23, 1918. It is conceded that no credit was given to Smith and Doolin on the books of the National Bank of Commerce on or before December 23, 1917, nor was the rental payable on said date credited to them until March 27, 1919.

It is under this provision of the lease, however, that the defendant claims that it has complied with the terms of said lease. It will be necessary to review the evidence produced at the trial and to ascertain whether the finding of the trial court upon this one question is clearly against the weight of the evidence. The evidence produced at the trial was very short and a great portion of the same was uncontradicted.

The facts concerning the transaction which are undisputed are that on or about December 1, 1917, the National Bank of Commerce received through the mail a check or draft with certain printed indorsements thereon and to which were attached certain vouchers. The material portion of the draft or check and the vouchers enclosed was as follows: "Eastern Oil Company,

"Buffalo N. Y. Nov. 28, 1917.
"Pay to the order of National Bank of Commerce $80.00 "—Eighty Dollars—Dollars.
    "Eastern Oil Company
        "Edw. M. Wheeler,
            "Secretary.
"To Central National Bank,
"of Tulsa, Tulsa, Okla.
            (Indorsement on back)
"Acceptance and indorsement of this check shall constitute a receipt in full of account as shown above. If not correct, please return without alteration.
            (Indorsements)
"National Bank of Commerce, Tulsa, Okla.
"Clearing House.
        "Paid
    "Mar 28, 1919. 2.
"Prior Indorsements guaranteed."

To the check was also attached a voucher with the following notation on the same:

"Per Bill Attached:
"Hugh King Jr. Rent due Dec. 23, 1917 20
    "(Manuel Sartz Tract)
"G. J. Smith & Wallace Doolin,
"Rent Due Dec. 23, 1917.                60"

The indorsement by the National Bank of Commerce appearing on the check was placed upon the check on the 27th of March, 1919, and the indorsement showing that the check was paid March 28, 1919, was placed upon the check by the Central National Bank of Tulsa on said date. The only portion of the evidence over which there is any material dispute is that concerning a telephone con-

versation between the cashier of the bank and some one in charge of the Eastern Oil Company office at Tulsa, presumably Mr. Shaffer.

Mr. Herndon, the cashier of the National Bank of Commerce, testified, in substance, that Mr. King was a customer of the bank; that when he received the check or draft he called Mr. King and advised him he had received the same and Mr. King instructed the cashier not to accept any rentals for him, nor to deposit any rentals to his credit. The cashier of the bank then testified that he did not know how to handle the transaction under those conditions, and, for the purpose of receiving further directions from the company, called the office of the Eastern Oil Company at Tulsa and advised them concerning the draft or check and that Mr. King had instructed him not to accept his part of the check, nor to make a deposit to his credit, and asked the company what to do with the same or how to handle the same, and the party at the office of the company directed him to hold the check or draft until he received further directions from the company. His testimony upon this question was as follows:

"A. Yes, sir. As I remember, twenty dollars of it was to be placed to the credit of Hugh King, and sixty dollars to the credit of Wallace Doolin. Mr. King notified us that he did not want it placed to his credit. Q. His twenty dollars? A. Yes, sir. A. Consequently we held the whole thing there in our possession. Q. This check you mean? A. Yes, it was in the bank in time for the payment of the rental and would have been deposited to the credit of the parties except for the statement made by Mr. King. We did not receive any further notification from the company, and, as I say, we just held it there subject to instructions and it was not until about this date stamped on the face of the check that the settlement was made and that instructions were given to us and we placed it to the credit of Wallace Doolin. * * * Q. Did you notify the Eastern Oil Company of the statement made to your bank by Hugh King and his request that twenty dollars be not deposited to his credit? A. I remember calling the office of the Eastern Oil Company here and stating the circumstances and whoever it was—I suppose it was the man in charge there—said just to hold the check until we got instructions. * * * Q. You finally collected the amount, however, and deposited it to the credit of Smith and Doolin on March 27, 1919? A. That question applies simply to that one check that appears to be late in deposit? Q. Yes, sir. A. Yes, sir; we got the money on it, and as I say it was held there in the bank and just remained there subject to instructions because it having made out all together I did not know how

to deposit it. Q. You don't know to whom you talked when you called up the office of the Eastern Oil Company? A. I was under the impression it was Mr. Shaffer. Q. You could not say definitely? A. No, sir; I could not swear to it."

The defendant, to contradict said evidence, produced Mr. Shaffer as a witness, who testified regarding the conversation had with the cashier of the bank as follows:

"A. I remember talking to some one of the bank. Q. Do you know who it was? A. No, I do not. Q. Do you know what that party stated to you? A. He said he had received a check and that Mr. King had refused to take his part of the rentals. Q. Mr. King had refused to take his part of the rentals? A. Yes, sir. Q. What did you tell him? A. I instructed him to do whatever the instructions were of the Buffalo office; in the meantime I would notify the Buffalo office that we were trying to adjust matters with Mr. King. Q. Do you know whether or not the matters were adjusted with Mr. King? A. I could not say for sure; that matter was turned over to Mr. Morrison. * * * Q. And when you ascertained the fact that there was a dispute between King and the Eastern Oil Company with reference to the lease on his land, you then notified the company then, didn't you? A. I notified the company that Mr. King refused to take his part of the rentals. * * * Q. And this office doesn't know when any payments are due? A. Well, we have a check file in case something comes up, but we pay no attention to that part of it. Q. That is handled entirely by the Buffalo office? A. That is handled entirely by the Buffalo office. Q. Did you have any authority from the Eastern Oil Company to give the bank any instruction with reference to this check? A. No, sir."

The company also produced Mr. Morrison, being the only other witness produced by the defendant, and he testified that he succeeded Mr. Shaffer in the Tulsa office, and that he settled the Hugh King controversy on or about March 27, 1919, and that the bank returned to him the money that was to be paid to Mr. King.

The only material part of the evidence that is conflicting is the testimony of the cashier and that of Mr. Shaffer. The cashier of the bank testified that Mr. Shaffer directed that he hold the check until the bank received further instructions from the Buffalo office. Mr. Shaffer testified that he directed the cashier of the bank to follow the instructions of the Buffalo office and he would notify the Buffalo office. Mr. Shaffer further testified that he did notify the Buffalo office. It must be remembered that this conversation took place about December 1st, or some 23 days before the rental was due and payable. It must be further remembered

that Mr. Shaffer stated that he had advised the Buffalo office regarding the King controversy over the check. As to what was in the letter from Mr. Shaffer to the Buffalo office, or whether it was a telegram or telephone message, it does not appear. This letter or telegram would no doubt throw light upon the kind of directions that Mr. Shaffer gave to the cashier of the bank, but the company has not seen fit to produce the same. If the company received such a letter, and it is not denied that it was received by the Buffalo office, it was received almost 20 days prior to the time the rentals were payable. As to what the Buffalo office did after receiving said communication, it does not appear in the record. The company makes no explanation of this matter in any way or in any form, but simply produced Mr. Morrison, who testified that in March, 1919, he made a settlement with Mr. King.

The trial court held that these facts did not amount to a payment according to the second method of payment as provided in the lease, and it is for this court to determine whether this finding is clearly against the weight of the evidence. In order to determine this fact, it might be suggested what is payment? The word "payment" is defined in 21 R. C. L. 7, as follows:

"'Payment' is not a word of technical legal meaning. It is well understood by the layman and, indeed, was brought into law proceedings from commercial life, and not from the law treatises. It may well be defined as the performance of the consideration clause of a contract, or the satisfaction of a liability imposed by law. It implies a debt from him who pays to him who is to receive, and that when the payment is complete the debt will be discharged. Payment is not a contract; it is the discharge of a contract by the performance of its terms."

This court, in the case of Continental Gin Co. v. Arnold, 52 Okla. 569, 153 Pac. 160, stated as follows:

"The term 'payment,' in its legal import, means the satisfaction of a debt by money or the representative of money, and not by novation, compromise, or accord and satisfaction."

Payment is defined by the Supreme Court of Louisiana in the case of Morgan's Louisiana & T. R. & S. S. Co. v. Stewart, 119 La. 392, 44 South. 138, 143, as follows:

The term "payment," as used in Civ. Code, art. 2131, means, "not only the delivery of a sum of money when such is the obligation of the contract, but the performance of that which the parties respectively undertook, either expressly or impliedly or by law, to give or to do."

The Supreme Court of New York, in the case of Persons v. Gardner, 106 N. Y. Supp. 616, 122 App. Div. 167, stated:

"'Payment,' is made by the debtor delivering to the creditor money or some other valuable thing to extinguish the debt, which is received by the creditor for the same purpose."

Payment may be defined as being the performance of the consideration clause of the contract, and the discharge of the contract by the performance of its terms. Payment implies a debt, or the right to pay from one who is to pay to the one who is to receive, and that when the payment is completed the debt will be discharged; or in an optional contract where the option may be extended by payment of a certain sum, it implies that the party has exercised his option and has delivered the amount according to the terms of the contract and the other party has received the same according to the terms of the contract.

If the trial court believed the testimony of Mr. Herndon, the cashier of the bank, its findings must be considered to be a finding of the following facts to exist:

There was payable a fixed sum December 23, 1917, or the lease would be terminated as to both parties. That the lessee, on or about the 28th day of November, 1917, mailed from its office at Buffalo a check made payable to the National Bank of Commerce with attached thereto a voucher or statement disclosing that $20 should be deposited to the account of Hugh King on payment of rental due December 23, 1917, and that $60 should be deposited to the account of Smith and Doolin for rent due December 23, 1917. That upon receiving the draft or check the cashier of the National Bank of Commerce advised Mr. King of receiving the draft and Mr. King instructed the cashier not to receive the $20 for him, nor to deposit the $20 to his credit. That upon receiving the directions from Mr. King, the cashier of the bank, not knowing how to handle the transaction, immediately called the office of the Eastern Oil Company at Tulsa, and talked to Mr. Shaffer, the superintendent of said office, and advised him of the facts, and Mr. Shaffer directed the cashier of the bank to hold the check until he received further orders from the company. The bank, in compliance with the request of Mr. Shaffer, held the check until March 27, 1919, and on said day the check was cashed and $60 deposited to the credit of Smith and Doolin.

Counsel for plaintiff in error in their reply brief have very vigorously stated that the Eastern Oil Company did not direct the

bank to hold up the 1917 check and they attempt to construe the testimony of Mr. Herndon to have a different meaning. There was nothing to indicate to Mr. Herndon in the papers enclosed in the envelope whether the check was to pay the rental upon one lease, 60 acres of which was owned by Smith and Doolin and 20 acres by Mr. King, or whether the transaction relating to Mr. King and the one relating to Mr. Smith and Mr. Doolin were separate and distinct transactions. The cashier might well have presumed, upon receiving a check for $80 with instructions to deposit $20 to King and $60 to Smith and Doolin's account, that the same was one transaction, and constituted the payment payable on one lease; both payments being due as disclosed by the vouchers December 23, 1917. The cashier testified that he did not know how to handle the transaction without knowing the facts. It does not seem unreasonable that he did not. Whether Mr, Shaffer, when talking to Mr. Herndon, knew that the check covered two separate leases and distinct transactions does not appear. Mr. Herndon testified, not that Mr. Shaffer told him to cash the check and hold the $20 that belonged to Mr. King, but that he directed him to hold up the check, and this is exactly what Mr. Herndon testified he did do, and held it until he received further orders from the company—that in March, 1919, he received orders from the company and complied with their request. Upon the other hand, Mr. Shaffer testified that he simply directed the cashier to comply with the directions of the company. This was what the cashier had just informed Mr. Shaffer that he was unable to do. We are unable to see anything unreasonable concerning Mr. Herndon's testimony, nor anything improbable, and we are unable to say that the same is unworthy of belief.

The question for determination is, Do these facts amount to a payment according to the terms of the lease contract, and on or prior to December 23, 1917? In determining these facts it is well to remember that this court has in a long line of decisions in construing contracts of this kind and character announced the following rule:

"When contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound." Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 Pac. 260; Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902; Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 Pac. 545; Mitchell v. Probst, 52 Okla. 10, 152 Pac. 597; Bearman v. Dux Oil & Gas Co., 64 Oklahoma, 166 Pac. 199; Northwestern Oil & Gas Co. v. Branine, 71 Oklahoma, 175 Pac. 533; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 Pac. 514.

By applying the same rule to the facts in the case at bar, has the lessee complied strictly with the terms of its contract in making its payment? These facts do not show such a compliance with the terms of the contract. The facts disclose that no payment was made to Smith and Doolin on or before December 23, 1917, nor were they given credit for the amount of rentals by the National Bank of Commerce on or before said date, nor did they receive credit at the bank for said amount until the 27th day of March, 1919, nor was the money accessible to them in any way. They had not received the money, and it was in no place subject to their check or order, nor was it so deposited until March 27, 1919. The evidence in the case disclosed no doubt that the company intended to pay the rentals. That the rentals were not paid or the terms of the lease were not complied with may be attributed to the following facts:

First. That the lease contract itself made no provision for paying by check or draft, and the company attempted to make payment in that manner.

Second. The company by its own acts commingled this transaction, or the payment of rentals to Smith and Doolin with a separate and distinct transaction between the company and Hugh King, thereby causing confusion.

Third. That Mr. Shaffer, who was in charge of the Tulsa office, ordered and directed the check of the company to be held up until the Bank received further orders, and, irrespective of whether the agent had any authority to give such an instruction, the instruction was given and acted upon.

Fourth. The company's agent at Tulsa testified he informed the company, presumably on the date he received notification from the bank at Tulsa, about December 1, 1917, that Mr. King would not accept his $20. What kind of a letter or how he notified the company, does not appear. The company offers no explanation and the record is silent as to anything that transpired in the office of the company from December 1, 1917, to March 27, 1919. During all of this time, without any fault on the part of the lessors, the terms and conditions of their lease were not complied with. They had not received the money, nor was the money placed in the bank according to the terms of the lease, nor was the money in a place where they could receive it.

Fifth. According to the testimony of Mr. Shaffer, the Buffalo office was notified there

was some controversy about the check given, and how to deposit the same, and this notice was received by them almost 20 days before the payment was due, and though they are presumed to have in their possession the notice received by them from Mr. Shaffer, they have not produced the same and the record is silent as to any steps taken by them to see that the terms of the lease had been complied with until more than one year after they had notice of that fact.

Sixth. It is evident from the record that from the form of the draft and receipt attached thereto, together with the vouchers, the company was attempting to have a receipt for the payment of the rentals of their lease contract. In the instant case, it would show that the check was issued for the payment of this rental, but their records would show this check had never been cashed and returned to them, and they would have no receipt for the payment of the rental, and did not have until March, 1919, and they have set out no reason why they permitted the transaction to continue for such a length of time without any mention of the fact.

If the terms of the lease were not complied with for the reasons stated above, or for any other reason, the lease fixes the status of the parties. The parties have entered into a contract and their rights should be determined by the terms of the contract itself if possible. They have provided in their contract what the result should be if the terms of the contract were not complied with. This court may construe contracts, but it is unable to make contracts for the parties, and if the parties have agreed in writing, and as a part of the consideration for their contract, without any exception, that upon a failure to comply with the terms the lease should terminate as to both parties, we see no reason why the parties should not live up to their contract. There are many kinds and characters of leases, and the terms of the leases are different, and it must be presumed that the lease contains the agreement of the parties, and where the terms are unambiguous there should be no interpretation placed upon the lease contract that could not be placed upon the same language used in any other contract.

This court has construed the identical kind of a lease upon two occasions.

First, Mr. Chief Justice Owen, in the case of Curtis v. Harris, supra, stated as follows:

"A court of equity will refuse to quiet title under an oil and gas lease where a well was not completed or payment tendered within a period fixed under an express provision that the lease should terminate as to both parties,

unless a well was completed or payment tendered. To refuse plaintiff relief is not to declare a forfeiture, the lease having terminated by its express terms."

Second. The question was then before this court in the case of Garfield Oil Co. v. Champlin, supra, the court stating as follows:

"The lessee is bound by its terms, and where, under the terms of an 'unless' lease, the lease terminated if a well was not completed in six months from the date thereof, or rentals paid as therein provided, the failure to complete a well or pay the rentals within the time stipulated automatically terminated the lease."

By applying the same rule, the failure to make the payment provided for in the lease on the 23rd day of December, 1917, automatically terminated the lease as to both parties.

The defendant, however, contends that the bank was the agent of the lessors and waived a strict compliance with the terms of the lease. In determining whether the bank was the agent of the lessors, it is necessary to look to the contract itself and the language used therein. The lease in question reads as follows:

"To lessor's credit in the National Bank of Commerce or its successors, which shall continue as the depository regardless of changes of ownership."

The parties when entering into this contract did not attempt to designate the bank as the agent of lessor, but saw fit to designate it as a depository. This court has twice passed upon leases very similar to this, and in the case of Mitchell v. Probst, 52 Okla. 10, 152 Pac. 597, this court used the following language:

"In fact, under the provisions of the contract, and in the absence of any other evidence, the bank was only a depository, agreed upon by the parties as a convenient place in which to deposit the money due the plaintiff, but with no authority to waive any rights of either party, or to bind either party further than to receive the money when paid. If the money had been deposited in the bank before the expiration of the time limit, it would have been a sufficient compliance with the terms of the contract; otherwise it is not."

It would seem that this is exactly what the parties in the instant case intended, because they especially referred to the fact in their lease contract that the bank should be the depository.

This court, in the case of Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902, stated as follows:

"There is nothing to show that the First National Bank of Boynton was the agent of the lessor or her grantee"

—although the lease in that case contained the provision:

"All payments of said rentals to be made at the First National Bank of Boynton to the credit of party of the first part."

The court then quoted with approval from the case of Chapple v. Kansas Vitrified Brick Co., 70 Kan. 723, 79 Pac. 666, which stated as follows:

"No money was ever deposited by the defendant in said bank to the credit of the plaintiffs, and no credit was caused to be entered on the books of the bank by defendant. The check was not delivered to plaintiffs, and they had no information of its existence until the 17th day of February, 1902. * * * The check of the company payable to the order of plaintiffs, in the hands of its treasurer, was not equivalent to placing the money in the hands of plaintiffs or depositing that amount to their credit in a solvent bank. It is immaterial that defendant was solvent, or that it had a deposit in the bank upon which it drew this check. The plaintiffs had not agreed to depend upon its solvency or to take its check. Upon the undisputed facts, the court should have instructed the jury to find for the plaintiffs."

Plaintiff in error relies upon the following cases: Friend v. Mallory (W. Va.) 43 S. E. 114; Lovett v. Eastern Oil Co. (W. Va.) 70 S. E. 707; Beatty Oil & Gas Co. v. Blanton, 245 Fed. 971; Texas Company v. Wimberly (Tex.) 213 S. W. 286.

While in each case above cited the court in passing upon the case referred to the bank as the agent of the lessor "to receive the money," yet in none of those cases did the court attempt to say that the bank became the general agent for the lessor, but simply the "agent to receive the money." Whether the bank is denominated the agent to receive the money or the depository where the money may be deposited does not seem material so long as the bank's authority is just the same in either case, and that authority is limited by the lease. There is no contention in any of the cases cited by plaintiff in error that making the bank the depository, or, as they refer to the bank as the agent of the lessor to receive the rentals, made the bank an agent with general authority, nor did it give the bank any authority except that conferred upon the bank by virtue of the lease contract.

The result reached in each of the cases cited would have been the same whether the bank was referred to as agent or as the depository. In strict legal sense, a state or national bank in its corporate capacity can-not act as the agent of an individual. Its rights and duties are defined by law. It is, by reason of its organization, a place for the deposit of money. While the officers of the bank may act as the agents for individuals, yet the bank as such in a strict legal sense cannot act as the agent of individuals. We think the term "agent," or "agency," is more confusing than the word "depository." In either sense the only authority the bank had was what was delegated to it by the lease contract and by the parties themselves.

This court in the two cases referred to has referred to the bank as the depository, and that has been the recognized rule in this state for ten years, and we see no reason to interfere with the rule announced in those cases, nor would it gain any useful purpose unless it could be said that referring to the bank as the agent instead of a depository might be a more confusing term, thereby permitting parties to attempt to rely upon acts of a bank as the agent, when said power or authority was not delegated to it by the contracting parties themselves.

The defendant in its brief subdivides its argument on other questions in the brief under the following headings:

"If the obligation was 'to have on deposit the rentals, etc.,' then that obligation has been performed. What is a deposit? 'A depositor is one who delivers to, or leaves with a bank, money subject to his order.' State v. Corning State Savings Bank (Iowa) 113 N. W. 500."

This position is untenable, for the facts do not conform to the facts in the case at bar. In the first place, neither the money nor credit was in the bank subject to the order of the plaintiffs. No such deposit was ever made, and in order to bring the facts in this case within the rule above announced it would be necessary to eliminate from the case the evidence of the bank cashier.

The defendant again asserts as follows:

"The lease provided that payment might be made, or tendered to the National Bank of Commerce for the lessor's credit; and if payment was made or tendered within the time and in any form acceptable to the bank, the omission of the bank to enter the same to the lessor's credit would not invalidate the payment."

This contention is likewise untenable, for the reason the evidence of the cashier of the bank disclosed that the check or draft was not accepted by the bank until it received further orders and directions from the company, and these directions were not received until March 27, 1919. Further, the check itself disclosed that it was not considered

a payment until received and accepted by indorsement. The indorsement was not made until March 27, 1919.

It is next asserted:

"When the bank received and accepted the check and subsequently cashed it, payment was effected as of the date the bank received the check."

This position is likewise untenable, for the reason the bank cashier testified the check was held up at the direction of the agent of the company for further instructions. This held the check in abeyance, and if the evidence of the bank cashier is true, or believed under the circumstances to be true, the check was not accepted until the check was indorsed, which was March 27, 1919. This certainly would not be considered payment to the plaintiffs while the check was held up under directions of some agent of the company.

It is next asserted as follows:

"Plaintiffs admit that payment to the bank would be payment to them. The check in payment was sent to the bank more than three weeks before the money was due, and retention of the check for that unreasonable period of time constituted payment to the bank, and therefore made the bank the debtor of Smith and Doolin before the due date."

This contention is likewise untenable according to the bank cashier's testimony. The bank could not be debtor to Smith and Doolin when the bank was ordered and directed to hold up the check. The check itself refutes any such contention.

The next contention is:

"If the plaintiffs were concerned with the medium of payment, then by their letter to the defendant dated July 3, 1919, they waived their objections thereto, ratified the medium in which payment was made, and estopped themselves from subsequently questioning it."

We do not believe this question is material in the case, for the letter of July 13, 1919, was written after all the transactions occurred, nor would the facts amount to an estoppel, nor was estoppel pleaded.

The next contention is:

"Under a general plea of payment, it is not necessary to show that payment was made in legal tender. Under such plea, evidence may be received that anything was given and received in satisfaction of the obligation."

This contention is not applicable, for the reason that there is no evidence that the check was accepted in satisfaction of the obligation until the 27th day of March, 1919, when the same was cashed, and on that date it was in satisfaction of the obligation, but not until that date.

The plaintiff in error cites numerous authorities and has a very extensive brief upon each question presented, but we are unable to agree with plaintiff in error that any of said positions can be applicable to the case at bar, for the reason that in order to consider either of said principles, the court would have to eliminate the evidence of the cashier of the bank, to wit: That after receiving the check and being informed by Mr. King not to credit $20 to his credit, he did not understand how to handle the transaction, and then called the office of the company and Mr. Shaffer directed him to hold the check until further orders from the company. This we are unable to do. When that evidence is considered, and if believed, the position taken by counsel for plaintiff in error upon each principle of law contended for is untenable.

It is next contended by defendant that a court of equity will not cancel a lease under the circumstances as shown by the record in this case. We do not think the position of plaintiff in error is tenable under the issues made in the trial court. Defendant did not plead equity, nor attempt to plead an equitable defense, but pleaded payment. It now relies upon the case of Shaffer v. Marks, 241 Fed. 139, and Aggers v. Shaffer, 256 Fed. 648. These cases are not in point, for the reason the lease in controversy there contained no provision that upon failure to pay the rental the lease should become absolutely null and void, nor did it provide that the lease should terminate as to both parties unless the rental was paid. Under the lease involved there, the lessee could maintain an action to collect the rent, if not paid. No such right existed in the case at bar. The application of the equitable rule announced in those cases can have no application to a case where the parties themselves have contracted that a failure to pay the rental when due terminates the lease as to both parties. Defendant further relied upon the case of Brunson v. Carter Oil Co., 259 Fed. 656. While the learned judge who wrote the opinion in that case based his contention upon section 2844 and section 908, Rev. Laws 1910, yet in that case the issue was raised by the pleadings and mistake was pleaded. This court distinguished the facts in that case in the case of Garfield Oil Co. v. Champlin, supra, Justice Pitchford, who delivered the opinion of the court, held that under the facts in that case there was a difference between a mistake and negligence, and that the court

never gave any relief on the grounds of negligence. This court, in the case of Curtis v. Harris, supra, held that there was no forfeiture of the lease, but there was an agreement that the lease terminated. This contention of plaintiff in error is untenable for the following reasons:

First, for the reason that the question was not raised by the pleadings, nor was it an issue in the trial of the case below.

Second, the facts in this case do not bring it within the rule announced in the case of Brunson v. Carter Oil Co., supra. The company failed to give any excuse for not making said payment although it had notice both at the Tulsa and Buffalo offices at least two weeks prior to the time the payment was due that there was a controversy over its check, and it gives no reason or explanation of why it did not attend to the matter until March 27, 1919. Even if this court would follow Judge Williams in the case of Brunson v. Carter Oil Co., the facts here do not bring it within the rule announced in that case.

For the reasons stated, the judgment of the trial court is affirmed.

HARRISON, PITCHFORD, BAILEY, and COLLIER, JJ., concur. RAINEY, C. J., and JOHNSON and HIGGINS, JJ., dissent.