### CHI-OKLA OIL & GAS CO. et al. v. SHERTZER et al.

No. 13826—Opinion Filed Oct. 7, 1924.

Rehearing Denied Dec. 23, 1924.

1. **Oil and Gas—Lease for Nominal Cash Payment—Presumption of Development as Consideration.**

If an oil and gas mining lease shows merely a nominal cash payment, it will be presumed that the principal consideration for the execution and delivery of the lease was to secure a test of the lands for the minerals.

2. **Same—Rights Granted by Lease.**

The lease does not grant, in praesenti, an interest to the lessee in the lands. The lease grants to the lessee the mere right to enter on to the premises to prospect for oil and gas. The imperfect interest· may be ripened into a vested estate by the development of ·production according to the terms of the lease.

3. **Same—Lapse of Lease by Failure to Develop or pay Rental.**

If the lessee neither enters for development, nor pays the renewal money for a new term on or before the expiration of the preceding term, the lease will lapse and become null and void by the force of its own provisions.

4. **Same—Construction of Leases.**

The scope and effect of an oil and gas mining lease are to be determined from the provisions of the contract and the law applicable thereto.

5. **Same—Lease Not Affected by Prior Oral Agreements.**

Neither the lessor nor the lessee will be

permitted to prove a prior or contemporaneous oral agreement which has the effect of changing the legal rights of the parties as fixed by the provisions of the contract and the law applicable thereto.

### 6. Same—Forfeiture of Lease—Conditions not Expressed—Province of Court.

If the parties provide for the forfeiture of an oil and gas lease, and do not express the conditions for the forfeiture, it becomes a matter for the court to determine from the situation of the parties, their apparent purpose in making the contract, and the subject-matter.

### 7. Same—Development as Chief Consideration—Right of Forfeiture—Presumption.

If it is apparent from the terms of the lease that the principal consideration for the execution of the lease was to secure a test of the property for oil and gas, it will be presumed that the lessor reserved the right of forfeiture to prevent the lessee from taking repeated terms to enter the property for prospecting for the minerals.

### 8. Same—Effect of Entry and Development.

After the lessee enters and commences to prospect and develop the property, in good faith, the ground for the particular forfeiture of the lease is destroyed. Thereafter, the grounds for the forfeiture of the lease, in favor of the lessor, will be measured by the rules of equity.

### 9. Same—Lease Construed.

The forfeiture provision as embodied in this lease had the effect of granting the right of entry to the lessee, after the expiration of the first term for entry, subject to the will of the lessor.

### 10. Landlord and Tenant—Termination of Tenancy—Right of Tenant to Notice.

The duty of the landlord to give notice of his intention to terminate the tenancy rests upon the fact that the term of the tenant is of uncertain duration, and the tenant is entitled to notice so that he may protect his crops and property on the premises.

### 11. Same—When Notice Unnecessary.

If the tenant has not entered on to the premises and has no property on the premises, the reason for the requirement of the notice does not exist.

### 12. Same—Termination by Execution of Subsequent Lease.

If the landlord has remained in the exclusive possession of the premises, it is not a matter of reentry by the owner, but merely that of declaring the termination of the right of entry by the tenant. The execution and delivery of a subsequent lease and entry by the tenant will be sufficient to terminate the right of entry in favor of the first lessee.

### 13. Judgment Sustained.

Record examined; held, to be sufficient to support the judgment in favor of plaintiffs and against the defendants.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Nowata County; C. W. Mason, Judge.

Action by C. P. Shertzer and John Shertzer against Geo. H. Beasley, H. A. Beasley, and Chi-Okla Oil & Gas Company to determine conflicting rights between the parties in oil and gas leases. Judgment for plaintiffs. Defendants bring error. Affirmed.

A. M. Etchen and A. B. Campbell, for plaintiff in error Chi-Okla Oil & Gas Co.

A. B. Campbell, for plaintiffs in error Beasley and Beasley.

H. H. Montgomery and S. J. Montgomery, for defendants in error.

Opinion by STEPHENSON, C. C. C. McAdoo and L. M. McAdoo, on December 2, 1914, executed and delivered an oil and gas mining lease to Jas. R. Lewis covering the lands involved in this action for a period of five years. The instrument provided that the lessee should commence drilling operations on or before January 5, 1915, or pay $1 per acre for one year's additional time to commence drilling operations. The lease provided that if drilling operations were not commenced on or before January 5th, or a renewal payment made of $1 per acre, the lease should be null and void. The lease further provided that either party might cancel the lease at his option by the payment of $1. The lessee failed to commence drilling operations on the land and failed to make the renewal payment on or before January 5, 1915. L. M. McAdoo forwarded notice of cancellation with $1 on June 14, 1915, to the lessee. The latter admitted receiving the notice, but claimed that the notice did not describe the lands involved in the lease. However, the lessee did not hold any other oil and gas leases from Mrs. McAdoo at the time of receiving the notice. Mrs. L. M. McAdoo executed and delivered an oil and gas mining lease to C. P. Shertzer and John Shertzer on September 7, 1915, covering the same lands for a period of five years. Jas. R. Lewis made a written assignment of his lease to A. A. Humphrey,

as trustee, on October 25, 1915. The trustee placed $160 in the bank to the credit of Mrs. McAdoo in the latter part of December, 1915, as a renewal payment for his lease. The Shertzers entered into the possession of the premises under their lease and commenced sinking a well for oil and gas. They brought in production according to the terms of the lease, and were in possession and developing the premises on October, 25, 1917. The Beasleys entered on to the premises on the latter date under a drilling contract from Humphrey, to sink a well while the Shertzers were in possession and developing the property. The Beasleys commenced sinking a well and completed the same by the use of force over the protest and objections made by the Shertzers. The trustees failed and refused to pay the Beasleys for drilling the well, the latter filed a mechanic's lien for the cost of drilling against the property. The Beasleys commenced an action to foreclose their mechanic's lien against the property on October 15, 1918, in which only A. A. Humphrey, as trustee, was named as defendant. Judgment followed for the Beasleys for the debt and order foreclosing their mechanic's lien on the property against the trustee. The sheriff of Nowata county sold the premises on the 26th day of November, 1919, upon an order of sale issued out of the cause. The Beasleys purchased the premises at the sale and received sheriff's deed for whatever interest Humphrey held in the property as trustee. The Shertzers sold and assigned their lease to Chi-Okla Oil & Gas Company on the 22nd day of August, 1919. The assignee executed and delivered its note and mortgage on the property to the Shertzers to secure an unpaid portion of the purchase price. The assignors warranted the title of the lease to the oil company. The Beasleys commenced to assert adverse ownership in the property through their sheriff's deed in the foreclosure proceedings. The Shertzers and the Chi-Okla Oil Company thereupon commenced action, as plaintiffs, against the Beasleys to determine the ownership of the mineral rights through the conflicting lease and sheriff's deed. The oil company made default in the payment of the note and mortgage given as a part of the consideration for the oil and gas lease. The Shertzers then commenced an action for debt and for foreclosure of the mortgage against the assignee. The Beasleys and the oil company filed a stipulation for the dismissal of the oil company in the action to quiet title, the Shertzers then made the oil company a party defendant in the ac-

tion. The Beasleys filed their answer asserting a paramount claim to the oil and gas mining rights through the sheriff's deed. The oil company adopted the allegations of the Beasleys and asserted the right to cancel the note and mortgage given by it to the Shertzers for the lease, for failure of consideration. The action to quiet title came on for trial and judgment was entered for the plaintiff and against the Beasleys, canceling and setting aside the sheriff's deed. The judgment denied the cancellation of the note and mortgage as prayed for by the oil company.

The Beasleys and the oil company have appealed the cause, and assign the following errors for reversal here: (1) The judgment is contrary to the evidence; (2) the judgment is contrary to law.

The principal complaint made by the plaintiffs in error is that the court refused to permit them to show an oral agreement for the payment of the renewal money at any time during the year following January 5, 1915, for the Lewis lease.

The disposition of this question depends upon the terms of the conveyance and the nature of the interest granted by the Lewis lease. The provisions of the lease which bear upon the questions are:

(1) The lease granted to Lewis the right to enter the premises to prospect for oil and gas from the date of the lease to and including January 5th, 1915; (2) the right to create a new or additional period of time for one year from January 5, 1915, to enter the premises to prospect for the minerals by the payment of $1 per acre; (3) the lease was for a general term of five years, and as much longer as oil or gas should be produced from the premises according to the terms of the lease; (4) the failure of the lessee to sink a well or to make a renewal payment should operate to terminate the lease and render the same null and void; (5) either party was given the right to cancel the grant by giving to the other party 10 days notice in writing of his election to do so, and tendering the sum of $1. The lessor, for the cash consideration of $1 and the covenants on the part of the grantee, granted certain rights to the lessee. The lessee was granted, first, the right to enter on to the premises at any time after the date of the lease, and to and including January 5, 1915, to prospect for and undertake to produce oil and gas from the premises. The right granted by the lease was limited to entry for these purposes, and an entry for any other pur-

pose would have been unlawful. The mere execution and delivery of the lease, without entry, did not burden the use and possession of the premises by the lessor, except the latter would not have had the right to prospect for oil or gas, during the period of time the lessee was authorized to exercise similar rights. The lessor was authorized to occupy and use the premises for every other purpose. The right to the free and unincumbered use and possession of the premises continued in the lessor after the execution and delivery of the lease until the lessee came on to the premises to prospect and develop the same for oil and gas; then, the possession and use of the premises by the lessor were subordinated to the rights of the lessee to the use and possession of such part of the premises as was reasonably required to enable him to exercise the right granted to him by the lessor. Pulaski Oil Co. v. Cannon, 62 Okla. 211, 162 Pac. 464; Barnsdale Oil Co. v. Leahy, 195 Fed. 731. As the right and use of the premises by the lessor is burdened only with the right of the lessee to enter on to the premises to prospect for oil or gas, the first right granted to the latter was the privilege of entering on to the premises to prospect for the minerals at such time as he elected to do so, on or before January 5th. If the lessee did not enter on to the lands to prospect for the minerals, the right to the use and possession of the property would continue unimpaired in the lessor. As the right of the lessee to the possession of any part of the lands depends upon his entry for the purpose of prospecting for the minerals, the mere grant of such right by the terms of the lease does not operate in praesenti to vest an estate in the lands in the lessee. Lowther Oil & Gas Co. v. Miller-Sibley Oil Co., 53 W. Va. 501, 44 S. E. 433, 97 Am. St. Rep. 1027. It does not make any difference in relation to the rights which are granted by the lease that we may denominate the instrument as a deed, lease, or license; it is the terms and provisions of the instrument that define the rights between the parties. The right as granted by the Lewis lease amounted to an imperfect estate in the premises which he might increase and ripen into a vested interest in the land by the expenditure of money and labor, and the production of oil and gas according to the terms of the lease. Gypsy Oil Co. v Marsh, opinion filed July 1, 1924, Okla, [petition for rehearing pending]; Parafine Oil Co. v. Cruce, 63 Okla. 95, 162 Pac. 716; Steelsmith v. Gartland, 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107.

The substance of the provisions of the lease is that the lessee was granted the right, to and including January 5, 1915, to go on to the property to prospect for oil and gas. If the lessee did not commence to sink a well on or before the date named, the lessor agreed to accept $1 per acre for the further grant of one year's time from January 5, 1915, to enter on to the premises for development. It was agreed between the parties that if the lessee did not commence sinking a well on or before January 5, 1915, the lease should be null and void, unless the lessee paid to the lessor $1 per acre for the additional year's time to commence development.

The cash consideration of $1 received by the lessor supported her grant of the following rights to the lessee: (1) the right to go on to the premises to prospect for oil or gas for a period of time to and including January 5, 1915; (2) the right of the lessee to take an additional period of time for a like purpose to and including January 5, 1916, by the payment of $1 per acre to the lessor; and (3) to make the matter of the additional time optional with the lessee, but binding on the lessor, subject, however, to the forfeiture provision which we will consider later.

The lessor granted the right to the lessee to go on to the premises at any time during the period of time between the date of the lease and January 5, 1915, to prospect for oil or gas. The privilege of exercising this right lapsed with the expiration of the latter date, unless the lessee created a new and further period of time for entering on to the premises for prospecting by the payment of $1 per acre. Franklin v. Empire Gas & Fuel Co., opinion filed May 27, 1924. Okla. [petition for rehearing pending]. If the further term was not created on January 5, 1915, the lease would be destroyed by the force of its own terms. The lessee was not bound to commence drilling a well on or before January 5th, or to create a new term for the purpose of development. Roberts v. Bettman (W. Va.) 30 S. E. 95.

It required the payment of a new consideration to create an additional period of time for development. A new consideration must move from the lessee to the lessor to support the new term. Unless the new term is created, commencing with the expiration of January 5, 1915, the lease would lapse, and it would require a new agreement to enable the lessee to go on to the premises for development purposes. The lessor specified the payment of $1 per acre for the new

term. The law applicable to the expressed provisions of the contract required the payment of $1 per acre on or before the expiration of January 5th. In any other event, the lease would lapse and become null and void. Ireland v. Chatman, 87 Okla. 223, 209 Pac. 408; Eastern Oil Co. v. Smith, 80 Okla. 207, 195 Pac. 773.

Under the provisions of the contract and the law applicable to the lease, the lessee was required to pay the renewal money on or before the expiration of January 5th. The legal provisions were as much a part of the contract as if they had been written into the contract, as the law applicable to the contract is a part of it. Neither the lessor nor the lessee will be permitted to prove an oral agreement which has the effect of changing the obligations of the parties as created by the expressed provisions of the lease and the law applicable thereto. Hardin v. Kirby, 25 Okla. 479, 106 Pac. 837.

The forfeiture provision of the contract does not relate to creating the right in favor of the lessor to cancel the contract if the lessee failed to commence development, and failed to pay the renewal money on or before January 5, 1915. The provisions of the contract and the law applicable thereto operated to forfeit the lease if the lessee failed to perform these conditions on or before the given date. The forfeiture provision would be meaningless if it were considered as applying only in the event of default by the lessee in these respects. It will be presumed that the parties placed the provision in the lease to serve some purpose. The provisions of the contract will be given effect in carrying out the purpose of the agreement, unless it should lead to a result apparently contrary to the intention of the parties. Withington v. Gypsy Oil Co., 68 Okla. 138, 172 Pac. 634; Wolf v. Blackwell Oil & Gas Co., 77 Okla. 81, 186 Pac. 484.

As the lessee paid a cash consideration of only $1 for the grant of the right to enter the premises for development, and to reduce the minerals to possession, it appears that the main purpose of the lessor in executing the lease was to secure the development of the property for these minerals. It is reasonable to suppose that the lessor reserved the right to cancel the lease in order to prevent undue delay by the lessee in the development of the property. In the absence of a forfeiture provision, the lessee might continue to claim the right to enter on to the premises for development for the full five year period of time by making the required renewal payments. This condition would apply even though both parties believed that the minerals existed under the property, unless the property was being drained by other wells to the manifest damage of the lessor. If the lessor had not placed the provision in the contract, ordinarily the grantor would have been bound to accept the renewal payments under the agreement for full five years. Rose v. Lanyon Zinc Co., 68 Kan. 126, 74 Pac. 625.

The forfeiture provision gave the lessor the right to elect to rescind the lease at any time before the lessee went on to the premises and commenced the development of the property in good faith. Then the usual forfeiture provisions provided for by equity would apply. The right to develop the premises so granted to the lessee was subject to the will of the lessor. The renewal payment was due not later than January 5, 1915, and the defendants do not claim that the payment was made until the latter part of December, 1915. The lessor forwarded the cancellation notice through the U. S. post office to the lessee on June 14, 1915. The lessee claims the notice was not sufficient to effect the cancellation of the lease for the reason that it did not describe the land covered by the lease. We think the notice was sufficient as the lessee did not hold any other lease from the lessor, but this is not material as the subsequent acts of the lessor were sufficient to cancel the Lewis lease.

The right of the lessee to enter the premises to commence the development of the property was being held at the will of the lessor. Eclipse Oil Co. v. South Penn. Oil Co., 47 W. Va. 94. The lessee had not yet entered on to the premises and had made no expenditures, and had not placed any property on the premises. The right of the tenant at will to receive notice rests upon the fact that the estate is for an uncertain term; consequently, he is entitled to notice of the landlord's election to cancel the tenancy, so that he may protect his crops and property on the premises. If the tenant has not gone in to the possession of the premises and has not commenced to develop the property, he cannot demand notice from the landlord. Eclipse Oil Co. v. S. Penn Oil Co., 47 W. Va. 95.

If the lessor has not given up possession of any portion of the premises, it is not a matter of reentry by the landlord. If the landlord has continued in the exclusive possession of the premises it is sufficient for the latter to declare that the right of the tenant to reenter is terminated. The

execution and delivery of the lease to the Shertzers by the landlord, who had remained in the exclusive possession of the property, was sufficient to terminate the Lewis lease. Eclipse Oil Co. v. South Penn Oil Co., 47 W. Vo. 95.

The parties did not specify the conditions to which they intended the forfeiture provision to apply; hence, the question of the intentions of the parties becomes a matter for the court to determine. The unexpressed intentions of the parties are as much a part of the contract as the expressed provisions. Gypsy Oil Co. v. Marsh, supra. Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213. The intention of the parties as to the conditions for which the lessor should be allowed to forfeit the lease is to be ascertained from the expressed provisions of the contract, the situation of the parties, and the subject-matter. Withington v. Gypsy Oil Co., supra. The fact that the lessor demanded and received only a nominal cash payment for the execution of the lease clearly indicates that the principal consideration for the execution of the lease was to secure a test of the property for oil and gas. The construction which we have placed on the forfeiture provisions gives effect to this purpose. If the lessee had commenced the development of the property in good faith, then the lessor would have been receiving the benefits she contracted for. The lessor could not then come into a court of equity and admit that she was receiving the benefits contracted for and at the same time declare a forfeiture of the lease. The lessor would not be able to cancel the lease after the lessee commenced the development of the property in good faith, as the condition which the lessor was guarding against by claiming the forfeiture would not exist. After the lessee has commenced the development, the ground which gave rise to the occasion for writing the forfeiture provision in to the contract has been removed. If development was the main purpose of the parties (and this is made evident by the small cash consideration), the construction we have placed on the lease effects the purposes of the lessor and prevents inequitable acts by either party in the performance of the conditions of the lease.

"The beautiful character or pervading excellency, if one may so say, of equity jurisprudence, is that it varies its adjustments and proportions so as to meet the very form and pressure of each particular case in all its complex habitudes." Story, Equity Jur. sec. 439.

The conclusions of law and rules which ought to fix the rights of the parties in this action, are: (1) As the lessor executed the lease for a nominal cash consideration, it should be presumed that the principal consideration was to secure development of the property; (2) the right first granted to the lessee was to enter the property to prospect and develop for oil and gas; (3) the right of the lessee to secure additional periods of time in which to enter for development was subject to termination at the will of the lessor; (4) the grant of the right of entry coupled with the right of cancellation reserved by the lessor, constituted an estate at the will of the lessor; (5) the grant of the right of entry expired at the end of the first term created by the lease for entering the premises, unless a new term was created by a new consideration; (6) as Lewis held no other lease from the lessor, the notice was sufficient to effect the cancellation of his lease; (7) as the estate granted was at the will of the lessor and the lessee had not entered possession of the premises or expended any sums of money for development, the lessee was not entitled to notice from the lessor of her intention to rescind, and the execution and delivery of the Shertzer lease terminated the Lewis lease; (8) as the Shertzers had developed production on the property and were in possession of the property, the entering of the Beasleys under the Lewis lease did not operate to create any rights in favor of the Beasleys for sinking the well under contract with the assignee of the Lewis lease. The actual possession of the Shertzers was sufficient to give notice of the extent of their rights to the Beasleys.

It follows that the judgment of the court in favor of the plaintiffs and against the defendants was without error.

It is recommended that the judgment of the court be affirmed.

By the Court: It is so ordered.